**Marilyn FIGUEROA, Plaintiff,**

v.

**The CITY OF NEW YORK, Department of Sanitation and Rocky Darmiento, Defendants.**

**No. 00 Civ. 7559(SAS).**

United States District Court, S.D. New York.

April 24, 2002.

Gregory Kuczinski, Kuczinski Vila & Associates, P.C., Elmsford, NY, for Plaintiff.

Bruce Rosenbaum, Assistant Corporation Counsel, New York, NY, for Defendants.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Marilyn Figueroa brings this action pursuant to 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, against The City of New York, the City of New York Department of Sanitation ("Sanitation Department"), and Rocky Darmiento, manager and supervisor for the Sanitation Department.[1] Figueroa seeks compensatory

---

1. Summary judgment must be granted for all causes of action against Darmiento, as supervisors may not be held individually liable under Title VII. See *Tomka v. Seiler,* 66 F.3d 1295, 1313 (2d Cir.1995), *abrogated on other grounds by Burlington Indus. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). In addition, while the Second Circuit

damages and attorney's fees stemming from twenty-three separate causes of action alleging sexual harassment, discrimination, disparate treatment, and retaliation.[2] Defendants move for summary judgment on four grounds: (1) any claims which arose prior to August 21, 1998, 300 days before plaintiff filed charges with the New York State Division of Human Rights ("NYSDHR"), are time barred; (2) the incidents alleged by Figueroa do not constitute a hostile work environment; (3) Figueroa has failed to establish a prima facie case of gender discrimination; and (4) there is no evidence that any adverse employment actions that occurred after she filed her discrimination complaint with the Sanitation Department were causally connected to the filing of that complaint. For the reasons set forth below, defendants' motion for summary judgment is granted in part and denied in part.

## I. FACTS

Figueroa has been a sanitation worker since 1993, working as a mechanical broom operator. *See* Defendants' Local Civil Rule 56.1 Statement ("Def.56.1")[3] ¶ 1. After one year, her mandatory probationary period was extended for three months, due to several complaints filed against her. *See* 6/7/01 Deposition of Marilyn Figueroa ("6/7 Fig. Dep."), Ex. 27 to Declaration of Gregory Kuczinski ("Kuczinski Decl."), at 36–37.

In March 1994, a fellow sanitation worker refused to transport Figueroa to her post, and stated "[b]etter yet, put her in the bucket of the front end loader and transport her in there." *See* Affidavit of Figueroa ("Fig.Aff."), Ex. 2 to Kuczinski Decl., at 2; 6/14/01 Deposition of Figueroa ("6/14 Fig. Dep."), Ex. 28 to Kuczinski Decl, at 37–43.

In August 1995, Figueroa attempted to put on work gloves when she discovered several condoms stuffed inside. *See* Fig. Aff. at 2; 6/14 Fig. Dep. at 14–19, 63–64. She filed a grievance with the Sanitation Department, which investigated the incident. Because it was unable to identify those responsible, it reprimanded the entire garage. *See* Def. Rule 56.1 ¶ 9; 6/7 Fig. Dep. at 14–16; Deposition of Rocky Darmiento ("Darmiento Dep."), Ex. C to Defendants' Notice of Motion for Summary Judgment ("Def.Not."), at 102; 8/21/95 Unusual Occurrence and Accident Report ("Report"), Ex. P to Def. Not.

On September 7, 1995, Figueroa received a written complaint for failing to obey her supervisor who had ordered her to take lunch at 10:40 a.m. *See* 9/7/95 Sanitation Department Complaint, Ex. Q. to Def. Not. As a result, she received a reprimand for violating Rule 3.1 of the Sanitation Department Code of Conduct—failure to obey a direct order. *See* 1/25/88 Sanitation Department Code of Conduct, Ex. M to Def. Not., at 3; 7/18/96 Sanitation Department Plea to the Docket, Ex. R. to Def. Not. Figueroa alleges that these rules were not applied evenly, and that the violation brought against her was in retaliation for her sexual harassment complaints. *See* Fig. Aff. at 3–4.

---

has not yet decided the issue, many courts have held that supervisors may not be sued in their official capacity. *See, e.g., Kulkarni v. City Univ. of New York*, No. 01 Civ. 3019, 2001 WL 1415200, at *2 (S.D.N.Y. Nov.13, 2001).

**2.** Plaintiff withdrew the section 1981 claim against all defendants. *See* 8/7/01 Letter from Jay Margolis, defendants' counsel, to the Court.

**3.** Unless otherwise noted, the allegations contained in Def. 56.1 that have been cited herein have been conceded by plaintiff.

During the time between approximately September 1995 and mid 1996, two sanitation routes were available, which Figueroa claims were to be assigned to workers in accordance with seniority. *See* Contract and Collective Bargaining Agreement Between the Union and the City of New York, Article VI, Section 4(b)(i)("Contract"), Ex. 1 to Kuczinski Decl. On both occasions, Figueroa was passed over and the routes were assigned to less senior male co-workers. *See* 6/7 Fig. Dep. at 65–74. She subsequently filed a grievance with the Sanitation Department. *See* 9/96 Report, Ex. 9 to Kuczinski Decl.

In July 1996, Figueroa applied for the position of back-up clerk, a temporary position that did not involve any increase in pay. *See* Def. 56.1 ¶¶ 12, 14. The job involved computer and administrative responsibilities in the garage office. *See* Darmiento Dep. at 103–04; Deposition of William C. Ford ("Ford Dep."),[4] Ex. D to Def. Not., at 102–03; Equal Employment Opportunity Complaint, Ex. II to Def. Not., at 5. Defendants claim that Figueroa was not selected for this position because her computer knowledge was inferior. *See* Darmiento Dep. at 103–04. Figueroa, in turn, responds that her alleged lack of knowledge about computers was a pretext for defendants' gender discrimination and retaliation against her. *See* 6/7 Fig. Dep. at 62–64.

From March 1997 through February 1999, Figueroa received at least ten written complaints, for such things as failure to obey orders and to appear for work. *See* Def. 56.1 ¶¶ 19, 20, 23, 26, 28, 29, 30, 35, 36, 37, 43; Written Complaints, Exs. U, V, KK, SS, X, Y, Z, CC, DD, EE, LL to

Def. Not. Figueroa denies the validity of these charges, and claims that some of them were filed in retaliation for her filing of sexual harassment complaints. *See* Plaintiff's Response to Def. 56.1 ¶¶ 19, 20, 23, 26, 28, 29, 30, 35, 36, 37, 43.

In the Winter of 1997, Figueroa was working on Randall's Island when two male co-workers made sexual comments concerning screws in a snow plow. *See* 6/7 Fig. Dep. at 49–54. In June 1998, Figueroa was not informed that her supervisor changed her work schedule.[5] *See* 6/14 Fig. Dep. at 4–9. Consequently, she was sent home without pay. *Id.;* 6/15/98 Report, Ex. 10 to Kuczinski Decl. She subsequently filed a grievance with the Sanitation Department. *See* 7/3/98 Report, Ex. 11 to Kuczinski Decl. In July 1998, Darmiento made a comment to Figueroa regarding her pants and the way they fit. *See* 6/14 Fig. Dep. at 20–22.

On July 28, 1998, Figueroa filed a discrimination complaint with the Department of Sanitation's Office of Equal Employment Opportunity ("OEEO"). *See* Sanitation Department, OEEO Complaint of Discrimination, Ex. AA to Def. Not. In March 1999, the OEEO issued its investigative findings, concluding that Figueroa was not treated unfairly or improperly based on her sex. *See* OEEO Investigative Findings, Ex. II to Def. Not., at 10–11. The OEEO office did find, however, that Figueroa had experienced "sexually harassing inappropriate behavior on the job," referring to the incident with condoms in the gloves. *Id.* at 11. The OEEO found that the Sanitation Department had taken immediate corrective and appropriate action. *Id.*

---

**4.** William C. Ford is one of Figueroa's former supervisors.

**5.** According to Supervisor Ford, the clerk tried to contact Figueroa to notify her of the

change. Unable to reach her, word was left with her mother. There is a dispute as to whether or not this constitutes adequate notification. *See* Ford Dep. at 53–56.

On or about August 4, 1998, Figueroa was re-assigned to work at a different facility. *See* 6/14 Fig. Dep. at 51–56. This re-assignment occurred after the customary time deadline for such a change (*i.e.* 2:10 p.m.), without proper notice to her. *Id.*

In October 1998, Figueroa was riding in a truck during the usual course of her duties. She was followed by five supervisors riding in four different vehicles. *See id.* at 56–63. She subsequently filed a grievance with the Sanitation Department. *See* 5/18/99 Report, Ex. 12 to Kuczinski Decl. According to defendants, it is customary practice that supervisors follow sanitation workers while they are performing their duties. *See* Ford Dep. at 27–30; Deposition of Ronnie Cooper, Ex. E to Def. Not., at 56–57; Deposition of Thomas Rodak, Ex. F to Def. Not., at 20–21; Deposition of Richard Suarez, Ex. G to Def. Not., at 35–37; Deposition of Rafael Gomez, Ex. H to Def. Not., at 19.[6] Also in October 1998, Figueroa was accused (wrongfully, she claims) of being ten minutes late to work. *See* 6/14 Fig. Dep. at 64–68. Her supervisor said to her "[n]ext time you better be here or you'll see what happens. I will get you off this route." *Id.*

In November 1998, Figueroa asked a clerk to place her name on the work chart to indicate her availability on November 16, 1998. *See id.* at 42–51. Because the clerk failed to do so, plaintiff was not permitted to work that day. *See id.* Following a grievance to her union, she was allowed to work that day, but she was transferred to a different facility. *See id.*

In February 1999, while on light duty, Figueroa was sent to run errands outside of her assigned district and her schedule was indiscriminately changed, all against established custom and practice for those assigned to light duty with the seniority privileges that she was entitled to. *See id.* at 68–76.

On June 4, 1999, Figueroa was waiting at the designated afternoon meeting point with a co-worker when she observed a supervisor, Van Bomma, sitting in a vehicle approximately one block away. *See id.* at 77–82. She left the meeting point to return to her garage at which point Van Bomma approached Figueroa's co-worker to sign his attendance card and give the appearance that Figueroa did not appear for the afternoon meeting. *See id.*

On June 8, 1999, Figueroa reported to work at 6:20 a.m. for the 7:00 a.m. shift. *See id.* at 4–10. She was informed by her supervisor that she had been scheduled for the 6:00 a.m. shift and was sent home without pay. *See id.* She had not been informed of the shift change, as required by the custom and practice of the Sanitation Department. *See id.* She made a grievance to a union representative who later spoke to Supervisor Bogfilio about the situation. *See id.* Bogfilio assigned Figueroa to clean up the street corners, a job reserved for workers who perform such duties in order to receive welfare checks. *See id.*

On June 12, 1999, Figueroa was threatened by Van Bomma, who stated that he would formally complain that Figueroa was untimely in appearing for the afternoon meetings. *See id.* at 66–68. On the same day, a male co-worker, who failed to appear for the afternoon meeting, was not reprimanded in any manner. *See id.*

---

**6.** Ronnie Cooper, Thomas Rodak, Richard Suarez and Rafael Gomez are all employees of the Sanitation Department.

On June 17, 1999, Figueroa filed a charge of discrimination, sexual harassment, and retaliation with the NYSDHR. *See* NYSDHR Complaint of Discrimination, Ex. JJ to Def. Not. There is no evidence in the record of the results, if any, of this complaint.

On July 17, 1999, Figueroa was threatened with a "blanket party" by an unknown colleague who was dressed in a common sanitation uniform. 6/14 Fig. Dep. at 104–106. According to Figueroa, a blanket party is "where they all get together and beat you down." *Id.* at 105.

In November 1999, Figueroa's application to be an enforcement officer with the Sanitation Department was denied. *See* 6/14 Fig. Dep. at 26. She claims that it was denied despite her qualifications, and that a male colleague who was junior to her got the job. *See id.* at 26–28. She claims that she was told by Inspector Diffendale that she would be accepted into the next class of enforcement officers. *See id.* at 38. When passed up for that next class, "sanitation police" told her that other women were becoming enforcement officers and that she was being singled out. *Id.* at 39.

In June 2000, Mike Tescano, an employee of the Sanitation Department, attempted to strike Figueroa with his car. *See id.* at 88–93. Figueroa reported this incident to the police. *See* 6/12/00 and 6/25/00 Incident Information Slips, Exs. 15 and 16 to Kuczinski Decl.

In August 2000, a particular cleaning route opened up which Figueroa claims should have been made available to her. *See* Complaint ¶¶ 112–16. She put her name on a list to indicate her interest and availability for this route. *See id.* Supervisor Fontana called the relevant personnel and prevented Figueroa from getting this assignment. *See id.;* 9/8/00 Report, Ex. 18 to Kuczinski Decl. She subsequently filed a grievance with the Sanitation Department. *See* 9/8/00 Report, Ex. 18 to Kuczinski Decl.

One night in August 2000, someone placed rotten fish under the seat of Figueroa's broom before her shift began. *See* 6/14 Fig. Dep. at 93–100. She subsequently filed a grievance with the Sanitation Department. *See* 7/26/00 Report, Ex. 17 to Kuczinski Decl.

On June 11 and August 1, 2001, Figueroa filed grievances with the Sanitation Department alleging harassment by her co-workers and supervisors at work. *See* 6/11/01 Report, Ex. 21 to Kuczinski Decl.; 8/1/01 Report, Ex. 23 to Kuczinski Decl.

The Sanitation Department performs random drug testing on its employees. Figueroa claims that she has been, and continues to be, tested more than any other sanitation worker in her field. *See* 6/14 Fig. Dep. at 82–88. This testing is designed to intimidate and harass her, not to determine illegal drug use. *See id.* In response, the Sanitation Department has noted that the subjects of drug and alcohol tests are randomly chosen by a computer. *See* 10/19/95 Letter from Joseph Miller, Deputy Director, Health and Safety, Sanitation Department, entitled "Randomness of CDL Selection Process," Ex. O to Def. Not.

On various occasions since approximately 1996 through the present, Figueroa's personal automobile has been vandalized and damaged in various ways, including scratches and the removal of the antennae. *See* 6/14 Fig. Dep. at 100–04. This vandalism, which occurred while the vehicle was located in Sanitation Department parking lots, was allegedly done by employees of the Sanitation Department. *See id.* at 100–04. On February 9, 2001, plaintiff filed a grievance with the Sanitation Department regarding the damage to her car.

*See* 2/9/01 Report, Ex. 19 to Kuczinski Decl.

## II. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law[,]' [while] [a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir.2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

In assessing the record to determine whether genuine issues of material fact are in dispute, a court must view the evidence "in the light most favorable" to the non-movant. *See Breland–Starling v. Disney Publ'g Worldwide*, 166 F.Supp.2d 826, 829 (S.D.N.Y.2001)(citing *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505). A court must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. *See Parkinson v. Cozzolino*, 238 F.3d 145, 150 (2d Cir.2001). "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact, once such a showing is made, the nonmovant must 'set forth specific facts showing that there is a genuine issue for trial.'" *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir.2000) (quoting *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505). However, the non-moving party may not "rest upon ... mere allegations or denials." *St. Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir.2000). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir.1999). *See also Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998) ("If the evidence presented by the non-moving party is merely colorable, or is not significantly probative, summary judgment may be granted.") (quotation marks, citations, and alterations omitted).

## III. DISCUSSION

### A. Time-bar

Title VII requires the timely filing of a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") prior to bringing a complaint in federal court. *See* 42 U.S.C. § 2000e–5(b). "In states such as New York that have an agency with the authority to address charges of discriminatory employment practices, the statute of limitations for filing a charge of discrimination with the EEOC is 300 days." *Butts v. City of New York Dep't of Hous., Pres. and Dev.*, 990 F.2d 1397, 1401 (2d Cir.1993). Failure to file a timely charge with the EEOC generally bars any subsequent civil action. *See id.; Contes v. City of New York*, No. 99 Civ. 1597, 1999 WL 500140, at *6 (S.D.N.Y. July 14, 1999); *Crawford v. New York City Bd. of Educ.*, No. 99 Civ. 925, 1999 WL 1072495, at *2 (S.D.N.Y. Nov.29, 1999).

In the Second Circuit, time limits established by Title VII are "analogous to a statute of limitations, and [are] therefore[ ] considered subject to waiver, estoppel, and equitable tolling." *Briones v. Runyon*, 101 F.3d 287, 290 (2d Cir.1996). *See also* 42 U.S.C. § 2000e–5(e). Federal courts have typically allowed for equitable tolling only sparingly. *See Irwin v. Dep't*

*of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). The burden of showing extraordinary circumstances justifying equitable tolling is on the plaintiff. *See Miller v. International Tel. & Tel. Corp.*, 755 F.2d 20, 24 (2d Cir.1985).

Figueroa filed a charge of discrimination with the NYSDHR on June 17, 1999.[7] *See* NYSDHR Complaint, Def. Ex. JJ. Defendants contend that all claims based on incidents that occurred prior to August 21, 1998 (300 days prior to the NYSDHR filing) are time-barred. Figueroa offers two arguments as to why incidents that occurred prior to that date should not be time-barred. *First*, she argues that the time requirement should be tolled because she reasonably remained ignorant of the filing requirement; and *second*, under the "continuing violation doctrine," those claims not filed within the 300 day period should not be time barred because they are part of ongoing discriminatory practices.

As support for her argument that she reasonably remained ignorant of the legal requirements for filing, Figueroa cites a Sixth Circuit case, *Amini v. Oberlin Coll.*, 259 F.3d 493, 500 (6th Cir.2001). Figueroa misreads the case. *Amini* merely stands for the proposition that the 300 days begins when the defendant becomes aware of the incident giving rise to the legal claim. In *Amini*, the plaintiff learned that his age was the motivation for his replacement by a younger employee well after the discriminatory decision was made. The court held that the 300 day period began when plaintiff became aware of the facts giving rise to the discriminatory motive, not at the time of the firing.

■ Figueroa's claim that she was reasonably ignorant is without merit. The Sanitation Department's Equal Employment Opportunity Policy handbook states: "There are statutory deadlines for filing complaints with each of these agencies.... [P]romptly contact the City Commission on Human Rights, the State Division of Human Rights, the EEOC, the Department of Justice, or a private attorney for further guidance." Department of Sanitation Equal Employment Opportunity Policy (the "Policy"), Ex. BB to Def. Not., at 12. Furthermore, it gives contact information for the NYSDHR and the EEOC. *See id.* at 11. Based on Figueroa's filing of a complaint with the union and the Sanitation Department's OEEO, it is apparent that she was aware of the Department's policy. Figueroa's failure to read the Policy thoroughly does not constitute reasonable ignorance of the statute of limitations requirement. All of the relevant legal information, including the existence of statutes of limitations and contact information, are contained in the twenty-page policy.

Figueroa further argues that under the continuing violation doctrine, claims prior to August 21, 1998, are not time-barred because defendants had an on-going practice of sexual discrimination against her from 1994–2001, which went unremedied. Plaintiff argues that during this time period she was excluded from using defendants' transportation vehicles which were readily available to her male co-workers, her seniority was disregarded in favor of male co-workers with less seniority, com-

---

7. The EEOC and the NYSDHR have a worksharing agreement under which the NYSDHR has the authority to remedy charges of employment discrimination in New York. *See Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 325 (2d Cir.1999). Therefore, Figueroa's charge is considered to have been filed with the EEOC for statute of limitations purposes upon her filing with the NYSDHR. *See Ogodor v. City of New York*, No. 98 Civ. 5353, 2001 WL 210192, at *3 (S.D.N.Y. Feb.26, 2001).

ments were made about her female anatomy, condoms were placed in her gloves, and sexual innuendoes were made to her with regard to "screws."

To invoke the continuing violation doctrine, plaintiff must show either " 'specific ongoing discriminatory policies or practices, [or] specific and related instances of discrimination [that] are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice.' " *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 766 (2d Cir. 1998) (quoting *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir.1994))(alterations added). *See also Weeks v. New York State*, 273 F.3d 76, 82 (2d Cir.2001). The "continuing violation exception is usually associated with a discriminatory policy, rather than with individual instances of discrimination." *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir.2001). "[M]ultiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir.1993). *See also Samuel v. Merrill Lynch Pierce Fenner & Smith* 771 F.Supp. 47, 49 (S.D.N.Y.1991) (finding no continuing violation where plaintiff did not allege a policy of discrimination, but merely alleged specific, unrelated instances of discrimination).

■ The Second Circuit has defined this exception narrowly. In *Lambert*, it stated that "the continuing violation exception applies to cases involving specific discriminatory policies or mechanisms such as discriminatory seniority lists or discriminatory employment tests." *Lambert*, 10 F.3d at 53 (citations omitted). District courts in this circuit have consis-

tently looked unfavorably on continuing violation arguments. *See, e.g., Trezza v. Dilenschneider Group*, No. 99 Civ. 185, 2000 WL 1702029, at *3 (S.D.N.Y. Nov. 14, 2000); *Lloyd v. WABC–TV*, 879 F.Supp. 394, 399–400 (S.D.N.Y.1995). Only "compelling circumstances" will warrant application of this exception to the statute of limitations. *Bembry v. Darrow*, 97 F.Supp.2d 281, 288 (N.D.N.Y.2000)(holding that numerous incidents of harassment and discrimination based on race did not amount to continuing violation where plaintiff could not "produce any policy documents or statements of a person involved in the decision making process that reflected a discriminatory intent"). *See also LaBeach v. Nestle Co.*, No. 00 Civ. 3667, 2001 WL 290051, at *5 (S.D.N.Y. Mar.26, 2001); *Buckvar v. City of New York*, No. 98 Civ. 3106, 2000 WL 274195, at *4 (S.D.N.Y. Mar.13, 2000). Because plaintiff has not alleged a specific discriminatory policy or practice, but rather alleges multiple unrelated acts, and offers no compelling circumstances that would warrant application of the continuing violation doctrine, the doctrine does not apply. Therefore, all claims of harassment and discrimination that occurred prior to August 21, 1998 are time-barred.

**B. Sexual Harassment Claim**

■ In order to prevail on a sexual harassment claim alleging a hostile work environment in violation of Title VII, a plaintiff must establish three elements.[8] *First*, the plaintiff must show that the workplace is permeated with "discriminatory intimidation, ridicule, and insult ... that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working envi-

---

**8.** In New York, the same standard of proof is required for claims brought under Title VII, the New York State Human Rights Law, and

the New York City Human Rights Law. *See Cruz v. Coach Stores*, 202 F.3d 560, 565 n. 1 (2d Cir.2000).

ronment." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). *See also Cruz,* 202 F.3d at 570. *Second,* the plaintiff must show that the treatment of which she complains was motivated by her gender. *See Fitzgerald,* 251 F.3d at 365. *Third,* the plaintiff must establish that "a specific basis exists for imputing the conduct that created the hostile work environment to the employer." *Perry v. Ethan Allen, Inc.,* 115 F.3d 143, 149 (2d Cir.1997). *See also Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

### 1. Hostile or Abusive Work Environment

■ "[C]ourts must distinguish between 'merely offensive or boorish conduct' and conduct that is sufficiently severe or pervasive as to alter the conditions of employment." *See O'Dell v. Trans World Entm't Corp.,* 153 F.Supp.2d 378, 386 (S.D.N.Y.2001)(quoting *Cruz,* 202 F.3d at 571). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher,* 524 U.S. at 788, 118 S.Ct. 2275. Accordingly, a plaintiff must establish that "either a single incident [of harassment] was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Cruz,* 202 F.3d at 570 (quotation marks omitted). Several factors to be considered when determining whether a workplace is hostile or abusive are: 1) the frequency of the discriminatory conduct; 2) its severity; 3) whether it is physically threatening or humiliating, or a mere offensive utterance; and 4) whether it unreasonably interferes with

an employee's work performance. *See Howley v. Town of Stratford,* 217 F.3d 141, 153–54 (2d Cir.2000).

Since August 21, 1998, the primary incidents that Figueroa claims contributed to a hostile work environment are: 1) she was threatened with a "blanket party," where co-workers would congregate and beat her; 2) Mike Tescano, a fellow employee, attempted to strike her with his car; 3)someone placed rotten fish under the seat of her broom; and 4) her car was vandalized while in the Sanitation Department's parking lot.

■ If the incidents are physically threatening, they may be severe enough to constitute a hostile work environment, even though they are not frequent or pervasive. *See Ferris v. Delta Air Lines, Inc.,* 277 F.3d 128, 135–36 (2d Cir.2001); *Fitzgerald,* 251 F.3d at 350–51. Here, a reasonable jury could find that these incidents are sufficiently severe as to constitute a hostile work environment.

### 2. The Treatment Must Have Been Motivated By Gender

A plaintiff must show that "one of the reasons for the harassment ... was that she was a woman." *Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp.,* 136 F.3d 276, 289 (2d Cir.1998). Figueroa claims that the dead fish that was placed in her broom connotes an unclean and unchaste woman, and is derogatory, intimidating, and even threatening. She goes so far as to claim that it is tantamount to placing a burning cross on the property of an African–American, or placing a swastika on Jewish property.

In addition, there is authority to support the proposition that time-barred incidents of harassment are admissible and relevant to show discriminatory intent. *See Eaton v. American Media Operations, Inc.,* No.

96 Civ. 6158, 1997 WL 7670, at *5 (S.D.N.Y. Jan.9, 1997) (holding that time-barred sexual harassment claim was "admissible and relevant to show [defendant's] general gender bias and therefore to prove discriminatory intent"); *see also Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1291 (11th Cir.1998)(stating that time-barred evidence may be admitted at trial to support inference of discriminatory motive); *Walden v. Georgia–Pac. Corp.*, 126 F.3d 506, 521 (3d Cir.1997)(same). Thus, the Court may consider the incidents prior to August 21, 1998, such as the condoms Figueroa found in her gloves and sexual comments made to her, in determining the motivation for the harassment. As such, there is sufficient evidence that a reasonable jury could find that the hostile work environment was motivated by Figueroa's gender.

### 3. Imputing the Conduct to the Employer

Figueroa must establish a basis on which to hold the Sanitation Department liable for the conduct of its employees. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 72, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). In order for Figueroa to impute liability to the Sanitation Department, she must show that the "employer either (1) provided no reasonable avenue for complaint or (2) knew of the harassment but did nothing about it." [9] *Meng v. Ipanema Shoe Corp.*, 73 F.Supp.2d 392, 401 (S.D.N.Y.1999). *See also Richardson v.*

*New York State Dept. of Corr. Serv.*, 180 F.3d 426, 440 (2d Cir.1999). There is no allegation that the Sanitation Department did not provide a reasonable avenue for complaint. In fact, Figueroa filed numerous complaints formally, as well as made oral complaints to her supervisors and union representatives, over the course of her employment. Figueroa claims that the Sanitation Department did nothing to remedy the situation. This is disputed by the Sanitation Department. Viewing the facts in the light most favorable to the plaintiff, a reasonable jury could conclude that the Sanitation Department did not do enough to remedy the situation. Because there are material issues of fact as to the existence of a hostile sexual environment and employer liability, plaintiff is entitled to bring her hostile work environment claim before a jury.

### C. Discrimination

Under Title VII, it is unlawful for an employer to "discharge any individual ... because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). Under the burden-shifting framework developed by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), in order to make out a prima facie case of discrimination, a plaintiff has the burden of showing: 1) membership in a protected class; [10] 2) satisfactory job performance; [11] 3) an adverse

---

**9.** Plaintiff also alleges that her supervisor, Darmiento, harassed her. "When a plaintiff accuses a supervisor of harassment, the employer's liability is presumed and can be avoided only by showing that: (1) the employer exercised reasonable care to prevent and promptly correct any sexual harassment by such supervisor; and (2) the employee unreasonably failed to avail herself of any corrective or preventative opportunities provided by the employer." *Mack v. Otis Elevator Co.*,

No. 00 Civ. 7778, 2001 WL 1636886, at *6 (S.D.N.Y. Dec.18, 2001)(citing *Quinn*, 159 F.3d at 767). Because the incident involving Darmiento is time-barred, there is no need here to apply this standard.

**10.** Defendants concede that Figueroa is a member of a protected class.

**11.** Although defendants argue that Figueroa was not performing her duties satisfactorily, and that she has received many complaints,

employment action; and 4) circumstances giving rise to an inference of discrimination. *See Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 98 (2d Cir.2001); *Tappe v. Alliance Capital Mgmt., L.P.*, 198 F.Supp.2d 368, 375 (S.D.N.Y.2001). In a case involving the failure to promote or rehire, a showing that the position was "ultimately filled by a person who is not a member of the protected class" may satisfy the fourth prong. *Farias*, 259 F.3d at 98 (citing *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir.1995)).

Once a plaintiff establishes a prima facie case, "a presumption of discrimination is created and the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment action or termination." *Id.* If the defendant meets this burden, "the presumption drops out of the analysis," and the plaintiff must meet the ultimate burden of proving that she was the victim of intentional discrimination. *Id.*

Despite these shifting burdens, " '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). "[O]nce a minimal prima facie case is proved and the employer's nondiscriminatory explanation has been given, the *McDonnell Douglas* presumptions disappear from the case, and the governing

standard is simply whether the evidence, taken as a whole, is sufficient to support a reasonable inference that prohibited discrimination occurred." *James v. New York Racing Ass'n*, 233 F.3d 149, 156 (2d Cir.2000). The court must apply a case-by-case approach, "examining the entire record to determine whether the plaintiff could satisfy [her] ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir.2001) (quotation marks omitted).

**1. Adverse Employment Actions**

Adverse employment actions include "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand." *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir.1999). The Second Circuit has also held that lesser actions may qualify, but has not provided a bright-line rule with regard to such lesser actions. *Id.* "Because there are no bright line rules as to which employment actions meet the threshold for 'adverse,' courts must make this determination on a case-by-case basis." *Wilburn v. Fleet Fin. Group, Inc.*, 170 F.Supp.2d 219, 237 (D.Conn.2001)(quoting *Richardson*, 180 F.3d at 446).

To sustain an adverse employment action, a plaintiff must "endure[ ] a 'materially adverse change' in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir.2000)(quoting *Richardson*, 180 F.3d at 446). In order for the action to be " 'materially adverse', a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job

---

viewing the evidence in the light most favorable to the plaintiff, her job performance is clearly a question of fact. *See Powell v. Syracuse Univ.*, 580 F.2d 1150, 1155 (2d Cir.1978)

(holding that plaintiff only needs to demonstrate that she "possesses the basic skills necessary for performance of [the] job").

responsibilities.' " *Id.* (quoting *Crady v. Liberty Nat'l Bank and Trust Co. of Indiana,* 993 F.2d 132, 136 (7th Cir.1993)). A " 'material adverse change' is one that 'has an attendant negative result, a deprivation of a position or an opportunity.' " *Campbell v. Grayline Air Shuttle, Inc.,* 930 F.Supp. 794, 802 (E.D.N.Y.1996) (citations omitted). While adverse employment actions extend beyond readily quantifiable losses, "not everything that makes an employee unhappy is an actionable adverse action." *Phillips v. Bowen,* 278 F.3d 103, 117 (2d Cir.2002). *See also Bennett v. Watson Wyatt & Co.,* 136 F.Supp.2d 236, 245–50 (S.D.N.Y.2001).

Figueroa complains that she was: 1) followed by her supervisors; 2) wrongfully accused of being late for work several times; 3) denied the opportunity to work on November 16, 1998, because a clerk failed to place her name on the work chart; 4) forced to spend one day performing duties that were beneath her given her seniority level; 5) denied a promotion to be an enforcement officer; 6) passed over for a particular sweeping route; and 7) subjected to more frequent drug testing than her colleagues.

■ Being followed by supervisors is not a materially adverse employment action. "[A]lthough reprimands and close monitoring may cause an employee embarrassment or anxiety, such intangible consequences are not materially adverse alterations of employment conditions." *Castro v. New York City Bd. of Educ. Pers.,* No. 96 Civ. 6314, 1998 WL 108004, at *7 (S.D.N.Y. Mar.12, 1998) (internal citations omitted).

■ Courts have held that negative evaluations, without any accompanying adverse results, are not cognizable. *See Durant v. Nynex,* 101 F.Supp.2d 227, 233 (S.D.N.Y.2000); *Valentine v. Standard & Poor's,* 50 F.Supp.2d 262, 284 (S.D.N.Y.

1999) ("Given that plaintiff's negative reviews did not lead to any immediate tangible harm or consequences, they do not constitute adverse actions materially altering the conditions of his employment.", *aff'd,* 205 F.3d 1327, 2000 WL 232048 (2d Cir.2000); *Castro,* 1998 WL 108004, at *7 (negative evaluations "unattended by a demotion, diminution of wages, or other tangible loss do not materially alter employment conditions")). Thus, the few times that plaintiff was accused of being late to work are not materially adverse employment actions.

■ Nor does spending one day performing menial duties or being precluded from working on a particular day constitute materially adverse employment actions. Courts require actions that are more significant and permanent. *See Phillips,* 278 F.3d at 117 (holding that there is no cause of action to "vindicate an employee's trivial complaints about an unpleasant working environment"); *Bennett,* 136 F.Supp.2d at 245 (holding that plaintiff's alleged underutilization did not rise to the level of actionable adverse employment actions).

■ On the other hand, defendants' failure to promote Figueroa to the position of enforcement officer, and the failure to assign her to a particular sweeping route are tangible adverse employment actions that may form the basis of a prima facie case of discrimination. Figueroa's claim that she was subject to more frequent drug testing than her colleagues is a close call. Frequent drug testing can be particularly invasive and humiliating. Thus, if Figueroa had offered evidence that the drug testing policy was manipulated such that she was disproportionately chosen for testing, such evidence could have established an adverse employment action. However, because Figueroa has offered no

evidence as to any manipulation, the drug testing, even if disproportionate to her, is not an adverse employment action. Furthermore, defendants have offered a legitimate non-discriminatory reason, *i.e.* random computer selection, to explain any increased testing of plaintiff. Figueroa has failed to rebut this reason.

### 2. The Position Was Filled by Members of the Protected Class

■ The position of enforcement officer was filled by several women. According to Figueroa, "[the supervisors] told me there were women that were applying and they were being accepted in. They couldn't understand why they were excluding me and only me." 6/14 Fig. Dep. at 39. This admission, as well as the lack of any showing that would give rise to an inference of discrimination, operate to defeat her prima facie case. Similarly, as to the sweeping route, Figueroa offers no evidence that only males were given such routes.[12] Therefore, summary judgment is granted to defendants on Figueroa's claims of gender discrimination.

### D. Retaliation

### 1. Time-bar

Retaliation claims must be filed with the EEOC (or an administrative affiliate) within 300 days of the retaliatory conduct. *See Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 712 (2d Cir.1996). This 300 day mark functions as a statute of limitations and, as such, precludes consideration of events that occurred prior to 300 days before the filing of the administrative complaint. *See id.* at 713. Thus, events that occurred prior to August 21, 1998 cannot be considered.

### 2. Analysis of Retaliation Claim

Title VII makes it an "unlawful employment practice for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by [Title · VII]." 42 U.S.C. § 2000e–3(a). "In order to make out a prima facie case of retaliation, a plaintiff must show by a preponderance of the evidence: i) participation in a protected activity known to the defendant; ii) an employment action disadvantaging the plaintiff; and iii) a causal connection between the protected activity and the adverse employment action." *Tomka,* 66 F.3d at 1308.

■ Defendants concede that plaintiff engaged in a protected activity by filing a complaint of discrimination with the NYSDHR. The next question is whether Figueroa was subjected to a materially adverse employment action. The *McDonnell Douglas* burden-shifting rules are applicable to claims of retaliation. *See Sarno v. Douglas Elliman–Gibbons & Ives, Inc.,* 183 F.3d 155, 159 (2d Cir.1999); *Richardson,* 180 F.3d at 443. The only materially adverse actions Figueroa alleges were the denial of her application to be an enforcement officer, the fact that she was passed over for the sweeping route, and the excessive drug testing. As noted earlier, *see supra* Part III.C.1, the first two allegations represent materially adverse employment actions. Where Figueroa's retaliation claim fails, however, is in the lack of causal connection between the protected

---

12. Even if the sweeping routes were only filled by males, this would only satisfy Figueroa's prima facie case. Defendants claim she was passed up for routes because she was not performing satisfactorily, thereby satisfying their burden of providing a legitimate non-discriminatory reason for the adverse employment action. Figueroa is unable to rebut defendants' proffered reasons with the scant evidence that denial of the sweeping route was motivated by her gender. Thus, defendants are entitled to summary judgment.

activity and these adverse employment actions.

*First,* Figueroa is unable to show that the "protected activity was closely followed in time by the adverse action." *Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1178 (2d Cir.1996) (quotations marks omitted). *See also Hollander v. American Cyanamid Co.,* 895 F.2d 80, 85 (2d Cir.1990) (holding that a period of three months between the protected act and the adverse act was too long to establish a causal connection); *Fitch v. R.J. Reynolds Tobacco Co.,* 675 F.Supp. 133, 138 (S.D.N.Y.1987) (holding that a period of seven months between the protected act and the adverse act was too attenuated). Figueroa filed her initial complaint of discrimination with the OEEO in July 1998. She was denied the position of enforcement officer in November of 1999, she was passed up for the cleaning route in August of 2000, and the frequent drug and alcohol testing occurred over many years. She has offered no evidence of retaliation, other than her conclusory allegations that these actions were caused by her filing of the complaint. Due to the passage of time between the filing and these actions, there is no basis for inferring a causal connection. *See Hopkins v. Digital Equip. Corp.,* No. 93 Civ. 8468, 1998 WL 702339, at *7 (S.D.N.Y. Oct.8, 1998) ("Mere conclusory allegations are insufficient to defeat a motion for summary judgment.").

*Second,* Figueroa has received numerous complaints, and has been passed up for many promotions both before and after her filing of the complaint, with no evidence that such adverse employment actions intensified after she filed her discrimination claim. As a result, Figueroa is unable to make out a prima facie case for retaliation. Defendants' motion for summary judgment on the retaliation claim is granted.

## IV. CONCLUSION

For the above reasons, defendants' motion for summary judgment is granted as to plaintiff's claims of discrimination, disparate treatment and retaliation, but denied with respect to plaintiff's claim for sexual harassment based on hostile work environment. A status conference is scheduled for May 2, 2002, at 4:30 p.m.