Hector SILVA, Plaintiff,

v.

**PENINSULA HOTEL and I.U.O.E. Local 94B, Defendants.**

No. 05 Civ. 08261(RJH)(TJK).

United States District Court, S.D. New York.

Sept. 13, 2007.

Hector Silva, Jersey City, NJ, pro se.

Lois M. Traub, Kane Kessler, P.C., Joseph Fredrick Farelli, Pryor Cashman LLP, Michael James D'Angelo, Pitta & Dreier LLP, New York, NY, Joseph James Lynett, Jackson Lewis LLP, White Plains, NY, for Defendants.

### *MEMORANDUM OPINION AND ORDER*

RICHARD J. HOLWELL, District Judge.

Plaintiff Hector Silva, proceeding pro se, brings suit against the Peninsula New York Hotel (the "Hotel") and the International Union of Operating Engineers, Local 94–94A–94B (the "Union"). Silva, a Hispanic male and former Hotel employee, brings three sets of claims against the Hotel under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). Silva alleges that the Hotel failed to train and promote him, that the Hotel discriminated against him in its allocation of overtime, and that the Hotel suspended, and eventu-

ally terminated, his employment in retaliation for his claims of discrimination. Silva's amended complaint alleges that the Union discriminated against him on account of his race in violation of Title VII. Silva also accused the Union of "non-representation," which has been interpreted as a claim that the Union breached its duty of fair representation in connection with Silva's grievances against the Hotel.

Defendants each moved for summary judgment on all of Silva's claims in his Amended Complaint. On May 18, 2007, Magistrate Judge Theodore Katz issued a Report and Recommendation (the "Report") recommending that defendants' motions for summary judgment be granted, and that all of Silva's claims against defendants be dismissed. Silva filed timely objections to the Report ("Objections"); the Court has received no objections from defendants. For the reasons set forth below, the Court grants defendants' motions for summary judgment and adopts the Report in its entirety.

### DISCUSSION

The facts underlying Silva's claims are extensively outlined in the Report, familiarity with which is assumed, and which is attached to this Opinion for ease of reference.

### I. Standard of Review

■ The district court adopts a magistrate judge's report and recommendation when no clear error appears on the face of the record. *See Nelson v. Smith,* 618 F.Supp. 1186, 1189 (S.D.N.Y.1985). However, the court is required to make a *de novo* determination of those portions of a report to which objection is made, 28 U.S.C. § 636(b)(1)(C), by reviewing "the Report, the record, applicable legal authorities, along with Plaintiff's and Defendant's objections and replies." *Bandhan v. Lab.*

*Corp. of Am.,* 234 F.Supp.2d 313, 316 (S.D.N.Y.2002). The court may then accept, reject, or modify in whole or in part recommendations of the Magistrate Judge. *See Nelson,* 618 F.Supp. at 1189. If, however, the party "makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." *Sanchez v. Dankert,* No. 03 Civ. 2276(LTS), 2004 WL 439502, at *1, 2004 U.S. Dist. LEXIS 3716 (S.D.N.Y. Mar.9, 2004); *accord Johnson v. City Univ. of New York,* No. 00 CV 4964(WK), 2003 WL 21435469, at *1, 2003 U.S. Dist. LEXIS 10615 (S.D.N.Y. June 19, 2003); *Greene v. WCI Holdings Corp.,* 956 F.Supp. 509, 513 (S.D.N.Y.1997). "If no objections are filed, or where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition, reviewing courts should review a report and recommendation for clear error." *Edwards v. Fischer,* 414

F.Supp.2d 342, 346–47 (S.D.N.Y.2006) (internal quotation marks and citations omitted).

## II.  Silva's Objections

■■■■  For the most part, Silva's objections consist simply of a restatement of his bare claims of discrimination. However, Silva's response appears to raise two specific objections to Judge Katz's Report.[1] Silva first claims that he was not properly notified of the import of the motions for summary judgment as required by Local Civil Rule 56.2. (Objections 3.)

Second, Silva objects to the Report's characterization of the facts underlying his failure to train and promote claim, and seeks additional time to obtain documents relating to grievances filed by the Union against the Hotel in 1995 and 1996 whose resolution Silva claims should have governed promotions to the position of Electronic Low Voltage Engineer. (Objections 4.)

---

1.  Plaintiff also renews his Application for Appointment of Counsel. (Objections 2) Plaintiff's original request for Counsel was denied by Judge Katz. (Order Den. Application for Appointed Counsel (Mar. 22, 2006) ("Order") [13].) As Judge Katz's Order explained, appointment of pro bono counsel in a Title VII case is made at the discretion of the Court. *See* 42 U.S.C. § 2000e–5(f)(1). The threshold issue for appointment of counsel is whether the "indigent's position seems likely to be of substance." *Ferrelli v. River Manor Health Care Ctr.,* 323 F.3d 196, 203 (2d Cir.2003) (quoting *Hodge v. Police Officers,* 802 F.2d 58, 61 (2d Cir.1986)). Judge Katz noted that the Equal Employment Opportunity Commission, the United States National Labor Relations Board and the New York Division of Human Rights each found plaintiff's various claims to be without merit. (Order 2–3.) After its own review, the Court agrees with Judge Katz that none of plaintiff's claims are "of substance." Plaintiff's failure to train and promote claim is time barred and unpersuasive as plaintiff could not demonstrate that he was, in fact, qualified for promotion. (Report 21–23, 30–

33.) His claim of discriminatory allocation of overtime assignments is unsupported and any inference arising from his limited overtime is contradicted by the substantial overtime assigned to one of plaintiff's co-workers who is also a Hispanic male. (*Id.* 33–38.) Plaintiff's claim that the Hotel's escalating disciplinary sanctions including termination were retaliatory is undermined by his well-documented violations of the Hotel's employment policies that preceded each sanction. (*Id.* 39–45.) Plaintiff voluntarily discontinued his otherwise time-barred claim that the Union discriminated against him. (*Id.* 45–49.) Finally, Plaintiff's implicit claim of the Union's breach of its duty of fair representation is untimely as to most of the Union's representation and devoid of any indication that the Union's actions were "arbitrary, discriminatory, or in bad faith." (*Id.* 52–59); *see also Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). In sum, whether or not counsel had been provided, none of Silva's claims were likely to succeed on the merits. Therefore the Court finds that plaintiff's claims do not merit appointment of counsel.

■ Silva's first objection that he was not given proper notice as a pro se litigant under Local Civil Rule 56.2 is without merit. Such notice [2] was served on Mr. Silva on September 14, 2006 by Federal Express Mail and U.S. Postal Service Mail. (Def. Hotel Mot. for Summ. J. 3.)

Silva's second objection is merely a repetition of arguments explicitly rejected by Judge Katz in his thorough and well-reasoned Report. Specifically, Silva's claim that he was qualified for the ELV position was considered by Judge Katz but rejected as time-barred and unsupported by specific admissible evidence. (Report 5, 21–23, 30–33.) Additionally, Silva's request for additional time to obtain documents relating to Union grievances against the Hotel from 1995 and 1996 is repetitive of earlier requests for additional discovery rejected by Judge Katz. (*See* Endorsed Letter (Sept. 5, 2006) [22]; Endorsed Letter (Sept. 22, 2006) [30].) Moreover, the Court notes that the cited Union grievances were specifically settled by a 1997 Agreement signed by plaintiff. (Report 5; Voluntary Settlement Agreement, dated Apr. 3, 1997, Def. Hotel Mot. for Summ. J., Clarke Aff., Ex. L.)

As plaintiff's objections "engage the district court in a rehashing of the same arguments" already made to, and addressed by, Judge Katz, the appropriate standard of review for the Report is clear error. *Edwards*, 414 F.Supp.2d at 346–47. In its review, the Court found no clear error on the face of the record.

## CONCLUSION

Having concluded that no error appears on the face of the record, the Court hereby adopts the Report in its entirety, and grants defendants' motions for summary judgment [24], [26]. The Clerk shall close this case.

SO ORDERED.

## REPORT AND RECOMMENDATION

THEODORE H. KATZ, United States Magistrate Judge.

**TO: HON. RICHARD J. HOLWELL, United States District Judge.**

**FROM: THEODORE H. KATZ, United States Magistrate Judge.**

Plaintiff Hector Silva, proceeding *pro se,* brings this action against his former employer, the Peninsula New York Hotel (the "Hotel"), and his former union, the International Union of Operating Engineers, Local 94–94A–94B ("Local 94" or "the Union"). Plaintiff, a Hispanic male and former Maintenance Mechanic at the Hotel, asserts several claims against the Hotel under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). Plaintiff claims that: (1) the Hotel failed to train Maintenance Mechanics for, and promote Maintenance Mechanics to, positions in the Hotel's Electronic Low Voltage ("ELV") Department; (2) the Hotel discriminated against him in

---

**2.** Though the Union should have filed its own 56.2 Notice with its motion for summary judgment, Mr. Silva was provided the requisite notice by the Hotel's 56.2 Notice. *See Covello v. Depository Trust Co.,* 212 F.Supp.2d 109, 116 (E.D.N.Y.2002) (finding that "the statement filed by [one defendant] serves to satisfy the obligation of both defendants" where the motion for summary judgment containing notice was filed on or around the same day as the motion without *it*). The

Hotel's motion for summary judgment and its 56.2 Notice were filed on the same day as the Union's motion. As Mr. Silva filed a specific opposition to the Union's motion including a rebuttal of the Union's statement of undisputed facts, it is clear that the Hotel's 56.2 Notice properly alerted Mr. Silva to the consequences of both defendants' motions for summary judgment. (Pl.'s Opp'n to Def. Union Mot. for Summ. J. 2–3.)

the assignment of Special Project overtime; and (3) the Hotel suspended, and eventually terminated, his employment in retaliation for his filing charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the New York State Division of Human Rights ("NYSDHR"). As against Local 94, Plaintiff claims that the Union discriminated against him based upon his race in violation of Title VII. Plaintiff also makes an apparent claim against Local 94 for breach of the duty of fair representation.

This proceeding was referred to this Court for general pretrial supervision and Reports and Recommendations on dispositive motions. Presently before the Court are Defendants' motions for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, this Court recommends that the motions be granted and that Plaintiff's claims be dismissed with prejudice.

## BACKGROUND[1]

### I. The Parties

#### A. Plaintiff

Plaintiff was employed by the Hotel in December 1987 as a Maintenance Mechanic.[2] (See Affidavit of Fanchea Clarke, dated Sept. 14, 2006 ("Clarke Aff."), ¶ 12; D1. 13, 15.)[3] Prior to his employment at the Hotel, Plaintiff had completed two years of high school and had worked as a laundry presser. (D1. 18–19.) Plaintiff also had attended six-month training programs at the Berk School of Plumbing and the Turner School of Air Conditioning. (See Clarke Aff. ¶ 13; Employment Application for Hector Silva, dated Nov. 23, 1987 ("Silva App."), attached as Ex. I to Clarke Aff.; D1. 21–23.) Plaintiff has no engineering degrees and no training, licenses, or education in computer operations and programming, sound systems, or electronics. (See Clarke Aff. ¶ 13; D1. 25, 27.)

#### B. The Union

Local 94 is a "labor organization" as defined in Section 2(5) of the Labor–Management Relations Act, 29 U.S.C. § 152(5). (See Union's Local 56.1 Statement of Undisputed Facts, dated Sept. 15, 2006 ("Union 56.1 Stmt."), ¶ 2.) Local 94 represents employees performing engineering and mechanic functions in commercial and residential buildings in the New York metropolitan area. (See id.; Declaration of Michael Gadaleta, dated Aug. 10, 2006 ("Gadaleta Decl."), attached as Ex. 7 to D'Angelo Decl., ¶ 6.) Local 94

---

1. Plaintiff provided virtually no evidence in opposition to Defendants' motions for summary judgment. Plaintiff was advised, pursuant to Local Civil Rule 56.2 that "[a]ny issue of fact that you wish to raise in opposition to the motion for summary judgment must be supported by affidavits or by other documentary evidence contradicting the facts asserted by the defendant. If you do not respond to the motion for summary judgment on time with affidavits or documentary evidence contradicting the facts asserted by the defendant, the court may accept defendant's factual assertions as true." See Rule 56.2; Notice to Pro Se Litigant Opposing Motion for Summary Judgment, attached to Notice of Motion for Summary Judgment, dated Sept. 14, 2006. Accordingly, the Court accepts as true uncon-tradicted facts asserted in Defendants' Rule 56 Statements and supported by affidavit, deposition testimony, or documentary evidence.

2. The Hotel began operating as the Peninsula in 1998. Plaintiff was originally hired in 1985 by the previous operators of the Hotel. (D1. 13–14.)

3. D1. refers to the Deposition Transcript of Hector Silva, dated May 31, 2006, attached as Exhibit ("Ex.") 5 to Declaration of Michael J. D'Angelo, dated Sept. 15, 2006 ("D'Angelo Decl."). D2. refers to the Deposition Transcript of Hector Silva, dated June 1, 2006, attached as Ex. 6 to D'Angelo Decl.

is a constituent local union of the New York Hotel and Motel Trades Council, AFL–CIO ("HTC"). (*See* Union 56.1 Stmt. ¶ 3; Gadaleta Decl. ¶ 6.)

## C. *The Hotel*

The Hotel is a luxury full service hotel located on 55th Street and Fifth Avenue in New York City. It is a member of the Hotel Association of New York City, Inc., an association representing over 200 hotels in the New York metropolitan area. (*See* Clarke Aff. ¶ 10.) As a member of the Association, the Hotel is bound by a collective bargaining agreement ("CBA") between the Association and the HTC and its member locals, including Local 94. (*See id.*) The CBA sets forth the terms and conditions of employment for the workers employed in job classifications covered by the CBA, including Plaintiff. (*See* Gadaleta Decl. ¶ 8.)

## II. *Plaintiff's Employment With the Hotel*

### A. *Job Description*

Maintenance Mechanics are responsible for performing preventative maintenance on Hotel facilities, and completing work orders, such as unclogging drains and replacing broken appliances and light fixtures. (*See* Clarke Aff. ¶ 14; Maintenance Mechanic Position Description, undated, attached as Ex. J to Clarke Aff.; D1. 29–41.) Maintenance Mechanics also are eligible for periodic, Special Project overtime work, for which the Hotel pays "time and a half." (*See* Clarke Aff. ¶ 17.) Regular overtime, defined as routine work within a job classification that exceeds thirty-five hours per week, is assigned on the basis of employee seniority. (*See id.*) Special Projects, such as renovations, new construction, and roof repairs, are assigned based upon the skills necessary to the particular project, not employee seniority. (*See id.*)

### B. *Union Activity*

Plaintiff was, at all times relevant to this lawsuit, a member of Local 94. (D1. 41.) He also served as a Union Delegate between 1993 and 2002, until his fellow Maintenance Mechanics elected to replace him. (*See* Gadaleta Decl. ¶ 10; D2. 76–77.)

Sometime in 1995–1996, Plaintiff filed two grievances on behalf of all Maintenance Mechanics regarding wages paid for work outside their job descriptions. On April 3, 1997, the Union and the Hotel entered into a Voluntary Settlement Agreement that provided for: (1) a weekly salary increase of $2.84 per week; (2) that "the maintenance mechanics will continue to perform all job functions as heretofore;" and (3) the payment of a total of $7,500 to all Maintenance Mechanics in settlement of all wage claims relating to the two grievances. (*See* Voluntary Settlement Agreement, dated Apr. 3, 1997 ("1997 Agreement"), attached as Ex. E to Gadaleta Decl.) The 1997 Agreement also contained a release of all claims arising from the grievances and was signed by all parties, including Plaintiff. (*See* Clarke Aff. ¶ 19; 1997 Agreement.)

### C. *Hotel Renovation and Formation of the ELV Department*

In 1998, the Hotel underwent an extensive renovation that included the installation of a computer system to operate heating, air conditioning, sound, and telephone service throughout the Hotel. (*See* Clarke Aff. ¶ 9.) The computer system is operated and maintained by technicians in the Hotel's ELV Department. (*See id.*) ELV technicians also repair and maintain the hand-held devices in each guest room that control virtually every electrical function, and perform general maintenance. (*See*

Gadaleta Decl. ¶ 11.) The ELV Department is wholly separate and distinct from the Maintenance Department; each department has its own managers, schedules, job classifications, payroll, and seniority lists. (*See* Clarke Aff. ¶¶ 26–27.)

Initially, the ELV Department was comprised of a Manager, Sureeyah "Sam" Vitjathorn, and an Assistant Manager, Guo Jiang "John" Ou. On or about March 2, 1999, Vasanat Bunnag was hired as a technician, and on or about August 14, 2000, Si Yuan Fan transferred into the department from the bell staff. (*See* Clarke Aff. ¶ 24.)

### D.  *The 1999 Agreement*

The ELV Department was initially a non-union department. On March 2, 1999, Michael Gadaleta, Local 94's Business Agent, and Fanchea Clarke, the Hotel's Director of Human Resources, entered into an agreement ("1999 Agreement") whereby ELV technicians would be covered by the CBA and represented by Local 94.[4] (*See* Clarke Decl. ¶ 32; Gadaleta Decl. ¶ 13.) The 1999 Agreement created a job category of "Electronics/Maintenance Mechanic" with an hourly rate of $18.26, applicable only to "qualified employees selected by management for this classification." (*See* 1999 Agreement, dated Mar. 2, 1999, attached as Ex. R to Clarke Aff.) While negotiating the 1999 Agreement, Gadaleta told Clarke that the Maintenance Mechanics wanted the Hotel to fill future ELV Mechanic job vacancies by seniority and to provide training to Maintenance Mechanics to help them qualify as ELV Mechanics. (*See* Gadaleta Decl. ¶ 14.)

Clarke opposed these proposals, and the Union dropped the training and hiring requests. (*See id.*)[5]

Sometime in 2001, Plaintiff sent Gadaleta a letter stating that the Hotel had violated the 1999 Agreement by hiring an ELV Mechanic who was not a Maintenance Mechanic. (*See* Letter of Hector Silva to Mike Gadaleta, undated, attached as Ex. C to Gadaleta Decl.; Gadaleta Decl. ¶ 15; D2. 31–33.) In August 2001, Plaintiff and other Maintenance Mechanics sent a second letter to Gadaleta stating that the Hotel had again violated the 1999 Agreement by not hiring a Maintenance Mechanic for an ELV Mechanic position. (*See* Letter to Mike Gadaleta, undated, attached as Ex. D to Gadaleta Decl.)

Gadaleta met with Plaintiff to discuss his concerns about the ELV Department. Gadaleta told Plaintiff that the 1999 Agreement did not require the Hotel to provide ELV training to Maintenance Mechanics or to fill ELV positions with Maintenance Mechanics, on the basis of seniority. (*See* Gadaleta Decl. ¶ 17.) Gadaleta also explained to Plaintiff that, during his negotiations with Clarke, he had asked the Hotel to fill the ELV positions with Maintenance Mechanics by seniority, but that the Hotel had been unwilling to do so. (*See id.*)

### E.  *Disciplinary History, Union Grievances, and EEOC Charges*

Plaintiff received approximately seventeen disciplinary writeups before filing his first charge with the EEOC in 2003. (*See* Clarke Aff. ¶ 35.) He received warnings in 1989, 1990, 1991, 1997 and 1998 for loiter-

---

**4.** Local 94 wanted the ELV mechanics to become Union members because they were performing work covered by the CBA. (*See* Gadaleta Decl. ¶ 12.)

**5.** Plaintiff contends, without any evidentiary support, that the 1999 Agreement, in effect, merged the Maintenance Mechanic and ELV

Technician positions, and provided that "the existing Maintenance Mechanics would be given priority in hiring and training for ELV jobs when they open up." (*See* Amended Complaint, filed Dec. 16, 2005 ("Am. Compl.")).

ing and poor work performance. In 1990 and 1991, he also received a warning for lateness. Plaintiff received warnings for substandard work performance in April 1989, April 1990, and in October 1990. In January 1997, Plaintiff was specifically warned for "sitting back on the couch with his legs crossed" talking to a co-worker in violation of Hotel policy. (*See id.*) In March 1997, Plaintiff was warned concerning his failure to complete assigned work and leaving work orders for his co-workers without advising his supervisor. In September 2002, he was warned again for similar misconduct for lateness, noncompliance with the dress code, and failure to follow departmental policy with respect to notification of completed work orders. (*See id.;* Employee Warning Notices, attached as Ex. S to Clarke Aff.)

Plaintiff filed his initial charge of discrimination with the EEOC on March 19, 2003, alleging that he had been retaliated against by the Hotel for complaining about the Hotel's failure to hire Maintenance Mechanics into the ELV Department. (*See* Notice of Charge of Discrimination, dated Mar. 19, 2003, attached as Ex. A to Clarke Aff.) The EEOC dismissed the charge the following month, noting that Plaintiff "did not complain to [the Hotel] of discriminatory practices" under the EEOC's jurisdiction, and that Plaintiff had told EEOC investigators that the "allegations related to union issues concerning the seniority of Mechanics that are already employed over new hires," and that "the hiring of new employees not only affected [Plaintiff] as a Hispanic individual but that it also affected Black and Caucasian employees as well." (*See* Letter of Delia Hernandez to Hector Silva, dated Apr. 14, 2003 ("Apr. 2003 Ltr."), attached as Ex. B to Clarke Aff., at 1.) Moreover, the EEOC investigator noted that the issues in Plaintiff's charge "appear to be untimely filed," and that "even if more recent actions were

to be discovered it is unlikely we can proceed because this matter continues to be union-related and is not covered within our jurisdiction." (*See id.* at 1–2.)

On or about April 17, 2003, Plaintiff was given three written warnings for several incidents of misconduct, including entering a guest room without authorization to socialize with a co-worker, reading the newspaper instead of performing work-related functions, insufficient productivity for failure to complete work orders, and poor work performance. On August 6, 2003, Plaintiff received a warning for failing to complete a work order to repair a television cabinet. (*See* Clarke Aff. ¶ 36; Employee Warning Notices, attached as Ex. T to Clarke Aff.)

On December 12, 2003, Plaintiff was found sleeping in the locker room. Although sleeping on the job is a terminable offense, the Hotel only suspended him for one day. (*See* Clarke Aff. ¶ 37; Memorandum Notice of Disciplinary Suspension, dated Dec. 17, 2003, attached as Ex. U to Clarke Aff.)

On February 10, 2004, Plaintiff and another Maintenance Mechanic, Darrell Barr, filed an EEOC charge against the Hotel and the Union alleging racial discrimination for failing to promote Maintenance Mechanics to the position of ELV technician, and for unlawful retaliation. (*See* Charge of Discrimination, dated Feb. 10, 2004 ("Feb. 2004 EEOC Charge"), attached as Ex. C to Clarke Aff.) Plaintiff alleged that the Hotel "only allow[s] Asians to work in [the ELV department]," that Plaintiff was not allowed to join the department because of his race, and that he had been retaliated against by the Hotel and the Union for complaining about the ELV hiring practices. (*See id.*)

Plaintiff amended his EEOC charge in October 2004 to allege national origin dis-

crimination. (*See* Amended Charge of Discrimination, dated Oct. 6, 2004, attached as Ex. C to Clarke Aff.) He also claimed that he had been denied Special Project overtime and had been unfairly disciplined in retaliation for filing the EEOC charge in February. (*See id.*)

Plaintiff received another warning for time and attendance in March 2004. (*See* Clarke Aff. ¶ 37; Letter of S. Puccio to Hector Silva, dated Mar. 25, 2004, attached as Ex. V to Clarke Aff.) On April 27, 2004, Plaintiff failed to perform assigned routine maintenance work. The following day, he refused to perform another job assignment and was found to have signed in and out for the day at the commencement of his shift, in violation of the Hotel's rules. Accordingly, the Hotel suspended Plaintiff for three days. (*See* Clarke Aff. ¶ 38; Memorandum of Fanchea Clarke to Hector Silva, dated Apr. 30, 2004, attached as Ex. W to Clarke Aff.)

Plaintiff grieved and arbitrated the second suspension, arguing that he had been unjustly harassed for his union activities. (*See* Report of Impartial Chairman Philip Ross, dated Feb. 24, 2005 ("Feb. 2005 Rpt."), attached as Ex. X to Clarke Aff., at 7.) After a three-day arbitration, the arbitrator sustained the suspension finding:

> [Plaintiff's] admission of punching in and out is similar to his testimony that he reads newspapers on duty, comes to work late, has not been in compliance with the dress code and makes unauthorized visits to guest rooms for the purpose of socializing and conversations

with co-workers. He has a single defense; that other employees have done the same thing without penalty. However, he has submitted no evidence of any kind, including corroborative testimony, that this is true.

(*Id.* at 12.)[6] The arbitrator continued: "the fact remains that [Plaintiff] has a heavy record of rule violation for which he has confessed, including sleeping on the job.... [U]nder the facts of the case, the three-day suspension is a model of progressive discipline." (*Id.*)

At the arbitration, Plaintiff also complained that he had not received enough Special Project work. Noting that the Hotel had argued that not all Maintenance Mechanics were equally qualified to do Special Project work, the arbitrator held that "[o]n the basis of argument and background information, I do not agree with the Union that all Engineers are fungible.... Hence, the burden is upon the Union to demonstrate that on a project by project basis, management is required to select men on a seniority basis and that the senior men on the list are qualified to do the work." (*See* Feb. 2005 Rpt., at 7.)

Five months later, on August 25 and 26, 2004, Plaintiff was found to have violated Hotel rules by unauthorized entry into a guest room during work hours. In addition, on August 25, 2004, upon departure from the Hotel at 3:00 p.m., Plaintiff signed out for 3:30 p.m. (the conclusion of his shift), and he signed in for the following day, in violation of Hotel rules.[7] He

---

**6.** While this Court cannot, of course, defer to an arbitral decision in a Title VII action, it may consider such a decision as evidence and accord it "such weight as the court deems appropriate." *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 60, 94 S.Ct. 1011, 1025, 39 L.Ed.2d 147 (1974); *accord Collins v. New York City Transit Auth.*, 305 F.3d 113, 119 (2d Cir.2002); *Gallimore–Wright v. Long Island R.*

*Co.*, 354 F.Supp.2d 478, 490 (S.D.N.Y.2005) ("[Arbitration] decisions in plaintiff's cases are not inherently conclusive. But they are very far from immaterial, even on a motion for summary judgment.")

**7.** Hotel employees are permitted to sign in only at the start of their shift, and sign out only at the end of their shift. Under the

had received a warning for similar conduct in April 2004. (*See* Clarke Aff. ¶ 40.) Plaintiff was suspended for two weeks. (*See id.;* Memorandum of Fanchea Clarke to Hector Silva, dated Aug. 26, 2004, attached as Ex. Y to Clarke Aff.)

Plaintiff grieved the third suspension. At the arbitration on February 3, 2005, Plaintiff argued that he was the subject of discrimination and harassment, that the evidence did not establish misconduct, and that a two-week suspension was not appropriate. (*See* Report of Impartial Chairman Elliott Shriftman, dated Mar. 10, 2005 ("Mar. 2005 Rpt."), attached as Ex. Z to Clarke Aff., at 2.) The arbitrator concluded that Plaintiff's "activities were shown to constitute a violation of Hotel rules and standards relating to unauthorized visits to rooms to which he was not assigned; failure to follow procedures; and insufficient productivity ... In view of the progressive discipline imposed against [Plaintiff] for similar infractions in the recent past, and particularly the one sustained by Chairman Ross, the Hotel had just cause to impose a two-week suspension against [Plaintiff]." (*See id.* at 4.)

On or about November 4, 2004, Plaintiff was suspended a fourth time for signing out for 3:30 p.m., at 3:02 p.m., and leaving work at 3:08 p.m. without permission. Plaintiff did not grieve the three-day suspension. (*See* Clarke Aff. ¶ 42.)

On December 9, 2004, Plaintiff left the Hotel for the day without completing several work assignments and notifying the Hotel of his failure to complete his work. (*See* Clarke Aff. ¶ 43.) As a result, a Hotel guest was inconvenienced and was not able to check into his room, resulting in a complaint to Hotel management. Upon investigation, the Hotel concluded that Plaintiff

had failed to complete his last two assignments, repairing a television armoire hinge and replacing light bulbs, although he had over one hour to complete the assignments. Another mechanic made the repairs in ten minutes. On December 10, 2004, the Hotel requested that Plaintiff attend a meeting to discuss the incident. Although the Union Delegate that Plaintiff requested be present was made available, Plaintiff refused to meet with management. (*See* Clarke Aff. ¶ 43.)

### F. Termination of Employment

On or about December 13, 2004, the Hotel terminated Plaintiff's employment because of substandard work, lack of productivity, failure to complete assignments, insubordination, and failure to follow Hotel policies. (*See* Clarke Aff. ¶ 43; Letter of Fanchea Clarke to Hector Silva, dated Dec. 13, 2004, attached as Ex. BB to Clarke Aff.) Plaintiff immediately commenced a series of challenges to the Hotel's actions.

### 1. State Charge

Plaintiff filed a complaint with the NYSDHR alleging discrimination based upon race and retaliation in violation of Title VII and the New York State Human Rights Law. (*See* Verified Complaint, dated Dec. 14, 2004, attached as Ex. C to Clarke Aff.) Plaintiff claimed that since filing his 2003 EEOC charge, he had been unfairly disciplined, denied overtime, and terminated.

In March 2005, the NYSDHR determined there was no probable cause to support the claim of discrimination with respect to the denial of a promotion and

Hotel's Code of Conduct, intentionally giving false or inaccurate information regarding hours worked is a basis for disciplinary ac-

tion, "up to and including termination." (*See* Code of Conduct, attached as Ex. H to Clarke Aff.)

overtime, as well as the claim of retaliatory discharge. The NYSDHR further noted:

> Our investigation failed to uncover sufficient evidence to conclude that [the Hotel's] nondiscriminatory reasons for terminating [Plaintiff's] employment are unworthy of credence and constitute a pretext for race and color discrimination and/or retaliation for opposition to discrimination.... Although [Plaintiff] received overtime, the record suggests that others were assigned more overtime for the non-discriminatory reason that [the Hotel] viewed their skill as being more appropriate for the work being assigned. There is a lack of evidence that [Plaintiff] received less overtime because of his EEOC complaint or because of his race and color.

(Determination and Order After Investigation, dated Mar. 22, 2005, attached as Ex. D to Clarke Aff., at 2.)

#### 2. *EEOC Charge*

After his dismissal, Plaintiff amended his EEOC charge to allege that he was terminated from employment "in retaliation for complaining about discrimination and for filing a Charge of Discrimination with the [ ] EEOC." (*See* Amended Charge of Discrimination, dated Dec. 27, 2004, attached as Ex. C to Clarke Aff.) In September 2005, the EEOC dismissed the charge on the grounds of insufficient evidence to support allegations of discrimination based on race and retaliation and/or discharge by the Hotel because of complaints about retaliation. (*See* Letter of Patrick A. Sanford to Hector Silva, dated Sept. 28, 2005, attached as Ex. E to Clarke Aff., at 2.)

#### 3. *Union Grievance*

Plaintiff also grieved his termination on the grounds of unlawful discrimination and retaliation. After a hearing, the arbitrator determined that the Hotel had just cause to terminate Plaintiff's employment, and concluded:

> It is true in many cases the Union's argument might be persuasive that termination would be excessive, especially for a long service employee. This is not one of them. I have examined [Plaintiff's] disciplinary record carefully, and it is an understatement to say that it is bad. Rarely have I perused so many oral and written warnings for the same offenses, committed over and over again. The [Plaintiff] is an intelligent man. Surely he must have understood that his dedication to skirting the rules and then breaking them time and again must lead to an inevitable result. His record, together with his present conduct, convinces me that he is incorrigible.

(Report of Impartial Chairman Philip Ross, dated July 14, 2005 ("July 2005 Rpt."), attached as Ex. CC to Clarke Aff., at 3.)

#### 4. *NLRB Charge*

Plaintiff also filed a charge against the Hotel with the National Labor Relations Board ("NLRB") alleging that he had been terminated for filing a grievance with the Union. (*See* Charge Against Employer, dated Dec. 14, 2004, attached as Ex. F to Clarke Aff.) The NLRB charges were dismissed in October 2005. (*See* Letter of Celeste J. Mattina to Hector Silva, dated Oct. 28, 2005, attached as Ex. F to Clarke Aff.) In dismissing the charge, the NLRB noted that "[t]he arbitrator issued a decision, dated July 14, 2005, finding that [Plaintiff was] not terminated because of [Plaintiff's] activities as a delegate or [Plaintiff's] filing of grievances, but rather due to [Plaintiff's] disciplinary record." (*See id.*)

### G. *Unemployment Benefits*

Plaintiff sought unemployment benefits. Following a hearing on January 24, 2005,

an administrative law judge of the New York State Department of Labor Unemployment Insurance Division denied Plaintiff unemployment benefits, concluding that his employment was terminated because of misconduct. The decision was sustained on appeal. (*See* Decision and Notice of Decision, dated Feb. 17, 2005, and Unemployment Insurance Appeal Board Decision, dated July 5, 2005, attached as Ex. EE to Clarke Aff.)

## DISCUSSION

### I. Standard for Summary Judgment

Summary judgment is appropriate only when the submissions of the parties, taken together, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Once a properly supported motion for summary judgment has been made, the burden shifts to the nonmoving party to put forth "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), or the essential elements of that party's case on which it bears the burden of proof at trial. *Peck v. Pub. Serv. Mut. Ins. Co.*, 326 F.3d 330, 337 (2d Cir.2003) (citing *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552). A summary judgment "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The non-moving party may not rest on its pleadings and rely on mere allegations, denials, conclusory statements, or conjecture to create a genuine issue for trial. *See Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Trinidad v. N.Y. City Dep't of Corr.*, 423 F.Supp.2d 151, 161 (S.D.N.Y.2006). Moreover, "[a] party opposing a motion for summary judgment simply cannot make a secret of his evidence until the trial for in doing so he risks the possibility that there will be no trial." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985) (quoting *Donnelly v. Guion*, 467 F.2d 290, 293 (2d Cir.1972)).

In deciding a motion for summary judgment, a court may not resolve factual disputes, but merely determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. A court "must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir.2006) (citing *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513).

When a case is fact-intensive and turns on the intent of one party, as employment discrimination cases often do, "trial courts must be especially chary in handing out summary judgment." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 87 (2d Cir.1996); *accord Feingold v. New York*, 366 F.3d 138, 149 (2d Cir.2004); *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir.), *cert. denied*, 530 U.S. 1261, 120 S.Ct. 2718, 147 L.Ed.2d 983 (2000). The trial court is under a duty in such cases to carefully scrutinize the record for circumstantial evidence that could support an inference of discrimination. *See Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir.1994). Nevertheless, even in Title VII cases, "conclusory allegations of discrimination are insufficient to satisfy the requirements of Rule 56(e)."

*Meiri,* 759 F.2d at 998; *accord During v. City Univ. of New York,* No. 01 Civ. 9584(BSJ), 2005 WL 2276875, at \*9 (S.D.N.Y. Sept.19, 2005); *Finney v. Planned Parenthood of N.Y. City, Inc.,* No. 02 Civ. 7942(CBM), 2003 WL 22928730, at \*4 (S.D.N.Y. Dec.10, 2003). The "salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases" than to other types of cases. *Meiri,* 759 F.2d at 998 (further noting that "[t]o allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases"); *see also Abdu–Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 466 (2d Cir.) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases."), *cert. denied,* 534 U.S. 993, 122 S.Ct. 460, 151 L.Ed.2d 378 (2001); *Fair v. Weiburg,* No. 02 Civ. 9218(KMK), 2006 WL 2801999, at \*3 (S.D.N.Y. Sept.28, 2006) ("In particular, a *pro se* party's bald assertion, completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment.") (internal quotation marks and citation omitted); *During,* 2005 WL 2276875, at \*4, 8–9 (granting summary judgment on discrimination claim where conclusory allegations of plaintiff were the only evidence offered).

## II.  *Plaintiff's Claims Against the Hotel*

### A.  *Failure to Train and to Promote*

Plaintiff alleges he was denied equal conditions of employment because the Hotel failed to train Maintenance Mechanics for, and to promote Maintenance Mechanics to, the position of ELV technician. The Hotel argues that these claims are time-barred and, in any event, without merit.

### 1.  *Statute of Limitations*

Title VII requires that a plaintiff in New York file an administrative claim within 300 days "after the alleged unlawful employment action occurred." 42 U.S.C. § 2000e–5(e)(1); *see also Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113, 122 S.Ct. 2061, 2072, 153 L.Ed.2d 106 (2002); *Tewksbury v. Ottaway Newspapers,* 192 F.3d 322, 326 (2d Cir.1999); *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 765 (2d Cir.1998); *Cabrera v. New York City,* 436 F.Supp.2d 635, 642 (S.D.N.Y.2006); *Torrico v. IBM Corp.,* 319 F.Supp.2d 390, 400–01 (S.D.N.Y.2004). "A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'" *Nat'l R.R. Passenger Corp.,* 536 U.S. at 110, 122 S.Ct. at 2070–71.

Plaintiff filed charges with the EEOC on February 17, 2004; thus, any challenges to employment actions that occurred more than 300 days prior to that date, that is before April 24, 2003, are time-barred. *See Nat'l R.R. Passenger Corp.,* 536 U.S. at 113, 122 S.Ct. at 2072; *Figueroa v. City of New York,* 198 F.Supp.2d 555, 562 (S.D.N.Y.2002); *Contes v. City of New York,* No. 99 Civ. 1597(SS), 1999 WL 500140, at \*6 (S.D.N.Y. July 14, 1999).

Plaintiff's training and promotion claims relate to the filling of positions in the ELV Department. The Hotel last hired an ELV technician on August 14, 2000; thus, the failure to train Plaintiff for, or to promote him to that position occurred prior to the April 24, 2003 cutoff date. Assuming *arguendo* that the failure to train Plaintiff for the position filled in 2000, or to promote him to that position, could be construed as an unlawful discriminatory action, such action clearly did not take place within 300 days of Plaintiff's 2004 EEOC

complaint.[8] Moreover, Plaintiff has not alleged any other unlawful employment action relating to his training and promotion claims that would fall within 300 days of the 2004 charge.[9]

### 2. Request for Additional Discovery

Plaintiff appears to concede that a claim based on the failure to be trained for, or promoted to, the 2000 ELV position is time-barred, and that he has failed to identify any allegedly unlawful employment actions that occurred within 300 days of the 2004 charge. Nonetheless, Plaintiff avers that he "must be permitted to conduct discovery ... to determine whether there were in fact positions available to him within 300 days of filing the EEOC complaint." (See Plaintiff's Opposition to Defendants' Motions for Summary Judgment, dated Nov. 17, 2006 ("Pl.'s Hotel Mem."), at 6; Affidavit of Hector Silva, dated Dec. 12, 2006 ("Silva Aff."), ¶¶ 4–6 (requesting opportunity to depose Fanchea Clarke

---

8. The Hotel erroneously calculates the 300–day limitations period back from March 19, 2003, the date of Plaintiff's initial EEOC charge. (See Defendant Peninsula New York Hotel's Memorandum of Law in Support of Motion for Summary Judgment, dated Sept. 14, 2006 ("Hotel Mem."), at 15.) Any Title VII claim relating to the 2003 charge would be untimely, and thus not cognizable before this Court, since Plaintiff did not commence a Title VII lawsuit within ninety days of April 14, 2003, the date he received a right to sue letter with respect to that charge. See Francis v. Elmsford School Dist., 442 F.3d 123, 126–27 (2d Cir.2006); Wynder v. McMahon, 360 F.3d 73, 76 (2d Cir.2004) (citing Cornwell v. Robinson, 23 F.3d 694, 706 (2d Cir.1994) (Title VII suit must be commenced within ninety days of receiving EEOC right-to-sue letter)).

Moreover, Plaintiff's 2003 charge was dismissed for only alleging retaliation for complaining about discrimination against senior union employees, who are not a protected class under Title VII. The EEOC stated that it had no jurisdiction over labor disputes governed by collective bargaining agreements. (See Apr. 2003 Ltr. ("this matter continues to be union-related and is not covered within our jurisdiction")). Thus, putting aside timeliness issues, even if the Hotel had filled an ELV position within 300 days of the 2003 charge, any claim of race or national origin discrimination for failure to train or to promote likely would be subject to dismissal as unexhausted. See Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 83 (2d Cir.2001) ("a plaintiff typically may raise in a district court complaint only those claims that either were included in or are 'reasonably related to' the allegations contained in her EEOC charge");

Bailey v. Colgate–Palmolive Co., No. 99 Civ. 3228, 2003 WL 21108325, at *12 (S.D.N.Y. May 14, 2003) ("Courts may only hear claims that were raised in the underlying administrative charge.").

The Hotel's error is somewhat academic, however, since any claim based on the 1999 or 2000 hirings would also be time-barred for not falling within 300 days of the 2003 charge.

9. There is no evidence in the record that any of the alleged discrimination and retaliation against Plaintiff falls under the "continuing violation" exception to the 300–day rule. See Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 713 (2d Cir.1996) (noting "[t]he continuing violation exception applies when there is evidence of an ongoing discriminatory policy or practice, such as use of discriminatory seniority lists or employment tests," or where "specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice") (internal quotation marks and citation omitted). Acts such as the failure to promote are considered discrete discriminatory acts subject to the 300–day rule. See Forsyth v. Federation Employment and Guidance Serv., 409 F.3d 565, 572 (2d Cir.2005). Moreover, "discrete discriminatory acts ... not related to a discriminatory policy are not a continuing violation." Cooper v. Wyeth Ayerst Lederle, 106 F.Supp.2d 479, 489 (S.D.N.Y.2000). Plaintiff has proffered no competent evidence of a discriminatory policy in ELV hiring. Likewise, as discussed infra, the Hotel does not operate an ELV training program; thus, there was no ongoing practice of denying Plaintiff training.

about ELV hiring since August 2000).)[10]

Under Federal Rule of Civil Procedure 56(f), "a party resisting summary judgment on the ground that it needs discovery in order to defeat the motion must submit an affidavit showing (1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303 (2d Cir.) *cert. denied* 540 U.S. 823, 124 S.Ct. 153, 157 L.Ed.2d 44 (2003) (quoting *Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir.1999)(internal quotation marks and citation omitted)); *accord Johnson v. Goord*, 487 F.Supp.2d 377, 401–402 (S.D.N.Y. 2007).

Plaintiff fails to provide adequate justification for requiring the Hotel to produce Clarke for a deposition. At no time prior to the discovery deadline of June 30, 2006 did Plaintiff advise the Court that he needed to question Clarke about whether there were any positions in the ELV Department that were available within 300 days of his EEOC charge. Indeed, Plaintiff waited nearly six months after the close of discovery, after the Defendants filed their summary judgment motions, to make this request. (*See* Silva Aff.) If for no other reason, Plaintiff's dilatory conduct merits denial of the request. *Cf. Burlington Coat Factory Warehouse v. Esprit De Corp.*, 769 F.2d 919, 926–28 (2d Cir.1985) ("A party who both fails to use the time available and takes no steps to seek more time until after a summary judgment motion has been filed need not be allowed more time for discovery absent a strong showing of need."); *Khan v. Abercrombie & Fitch, Inc.*, No. 01 Civ. 6163(WHP), 2003 WL 22149527, at *12 (S.D.N.Y. Sept.17, 2003) (same); *Williams v. Bank Leumi Trust Co. of New York*, No. 96 Civ. 6695(LMM), 2000 WL 343897, at *5 (S.D.N.Y. Mar.31, 2000) (denying plaintiff's motion for a continuance in responding to motion for summary judgment, in order to obtain further discovery, where plaintiff did not seek court intervention with respect to discovery problems until after the discovery cutoff and until response to summary judgment motion was due).

Moreover, Plaintiff's affidavit does not meet the requirements of Rule 56(f). Plaintiff states only that he wishes to depose Clarke as to the existence of any ELV positions after 2000.[11] (*See* Silva Aff.

---

**10.** Plaintiff argues that his failure to train and to promote claims are timely because he has asserted, since 1998, various claims through mediation and arbitration challenging the Hotel's hiring practices in the ELV Department. (*See* Pl.'s Hotel Mem., at 1.) ("I have fought long and hard to make certain that my cases w[ere] not forgotten and have amended the charges, periodically to bring all three claims collectively together to be addressed and resolved.") However, the only claims against the Hotel that are properly before this Court are those asserted in Plaintiff's Complaint and Amended Complaint under Title VII, which were timely filed. Any claims asserted by Plaintiff through mediation and arbitration have no bearing on whether Plaintiff meets the timeliness or exhaustion requirements of Title VII.

**11.** In his affidavit, Plaintiff also requests additional discovery on the terms of the 1999 Agreement. (*See* Silva Aff. ¶ 4.) The Court fails to see why this is warranted. The Court has already ordered the Hotel to "submit an affidavit, by a person with knowledge, explaining its position that no combination position was created [by the 1999 Agreement], and explaining the [1999] 'agreement' which Plaintiff cites to." (Order, dated Aug. 7, 2006.) Pursuant to that Order, the 1999 Agreement is in evidence, as are sworn statements from Clarke and Gadaleta—the individuals who negotiated the Agreement—about the terms of the Agreement.

¶ 5.) Plaintiff does not explain how deposing Clarke would "reasonably [be] expected to create a genuine issue of material fact." Rather, he seeks the deposition with the mere hope that it will yield helpful information.

Finally, the Hotel asserts, and has provided employment records indicating, that there have been no vacancies in the ELV department since 2000. (*See* Clarke Aff. ¶ 24; Timesheets, Technology (ELV) Department, attached as Ex. P to Clarke Aff.) Plaintiff dismisses this evidence as a "bare bone assertion," that is "totally unsubstantiated," yet offers nothing more than his own speculation and conjecture in support of his claim. (*See* Pl.'s Hotel Mem., at 6.) This is insufficient, for evidence in opposition to a summary judgment motion must be based on "concrete particulars," not "conclusory allegations." *Thomas v. iStar Financial, Inc.,* 438 F.Supp.2d 348, 360 (S.D.N.Y.2006) (quoting *Schwapp v. Town of Avon,* 118 F.3d 106, 111 (2d Cir.1997)); *see also* Fed. R.Civ.P. 56(e).

Accordingly, Plaintiff's request for additional discovery is denied.

### 3. *Merits*

Even if Plaintiff's failure to promote and failure to train claims are not found to be time-barred, they should be dismissed on the merits. Plaintiff presents not one scintilla of evidence that he was the victim of racial discrimination. Rather, his claim rests solely on the dubious proposition that he and other Maintenance Mechanics were *entitled* to be trained as ELV technicians, and to be promoted to any open positions in the department. (*See* Pl.'s Hotel Mem., at 3.) ("[I]n our agreement of 1997 . . ., it was clearly agreed . . . that training w[as] to be provided for mechanical engineers who chose to want to apply for job openings or positions of ELV technician.".)

Even if Plaintiff is correct as to his contractual rights—although there is no evidence in the record that he is—such a claim has nothing to do with Title VII. Title VII protects individuals from discrimination on the basis of their membership in a protected class; it is not the means for enforcing collective bargaining agreements.

#### a. *Legal Standards*

A plaintiff alleging unequal access to training under Title VII must demonstrate that the employer offered training to other employees and that the plaintiff was denied that training under circumstances giving rise to an inference of discrimination. *See Ani v. IMI Sys., Inc.,* No. 98 Civ. 8430(DAB)(MHD), 2002 WL 1888873, at *6 (S.D.N.Y. Aug. 15, 2002) (citing *Lopez v. Metro. Life Ins. Co.,* 930 F.2d 157, 161 (2d Cir.), *cert. denied,* 502 U.S. 880, 112 S.Ct. 228, 116 L.Ed.2d 185 (1991)).

To assert a *prima facie* case of a discriminatory failure to promote, a plaintiff must demonstrate: "(1) she is a member of a protected class; (2) she 'applied and was qualified for a job for which the employer was seeking applicants'; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." *Petrosino v. Bell Atlantic,* 385 F.3d 210, 226 (2d Cir.2004)(quoting *Brown v. Coach Stores, Inc.,* 163 F.3d 706, 709 (2d Cir.1998)); *accord Butts v. N.Y. City Dep't Of Housing Preservation And Dev.,* No. 00 Civ. 6307(KMK), 2007 WL 259937, at *10 (S.D.N.Y. Jan. 29.2007).

Once the plaintiff has established a *prima facie* case of discrimination, the burden shifts to the defendant, who must then show that "some legitimate, nondiscriminatory reason" exists for the alleged discriminatory actions. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511 n. 3, 113 S.Ct.

2742, 2748 n. 3, 125 L.Ed.2d 407 (1993) (quoting *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981)); *see also McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973); *Feingold,* 366 F.3d at 152. The defendant need not prove by a preponderance of the evidence that the reasons for its actions were not discriminatory, since the burden of persuasion remains with the plaintiff throughout the case; the defendant must simply present clear and specific non-discriminatory reasons for its actions. *See Burdine,* 450 U.S. at 254–58, 101 S.Ct. at 1094–96. If the defendant presents legitimate reasons for its actions, the plaintiff must then be given an opportunity to demonstrate that the defendant's stated reasons are merely a pretext for discrimination. *See Reeves v. Sanderson Plumbing Prods. Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000); *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095; *McDonnell–Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825. "If the defendant has stated a neutral reason for the adverse action, 'to defeat summary judgment ... the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination.' " *Feingold,* 366 F.3d at 152 (quoting *Stern v. Trs. of Columbia Univ.,* 131 F.3d 305, 312 (2d Cir.1997)); *accord Patterson v. County of Oneida,* 375 F.3d 206, 221 (2d Cir.2004) ("if the plaintiff has failed to show that there is evidence that would permit a rational factfinder to infer that the employer's proffered rationale is pretext, summary judgment dismissing the claim is appropriate").

b. *Application*

While Plaintiff is indisputably a member of a protected class under Title VII, he fails to make out a *prima facie* case of discrimination with respect to either a failure to train or a failure to promote.

Insofar as his failure to train claim, the Hotel has represented that it "never offered Hotel sponsored training for the ELV position" to any employees (*see* Clarke Aff. ¶ 30), and Plaintiff has adduced no admissible evidence to the contrary. Moreover, Plaintiff fails to identify any individuals of any other races or national origins who received ELV training sponsored by the Hotel.[12] Plaintiff, therefore, fails to provide competent evidence from which a jury could reasonably find that he was denied employer-sponsored training for the ELV department under circumstances giving rise to an inference of discrimination.[13]

Likewise, Plaintiff fails to state a viable claim for failure to promote. In particular, he fails to meet the second prong of a *prima facie* case because he has not estab-

---

**12.** The record indicates that Fan received training before he was promoted to the ELV department; however, he undertook the training on his own time. (*See* Clarke Aff. ¶ 25.) Plaintiff does not claim that he requested to be cross-trained on the ELV system on his own time.

**13.** All four members of the ELV Department have what appear to be Asian surnames. However, there is no additional information in the record about their race or national origin. During the relevant time period, the Maintenance Department was comprised of twelve employees, five of whom were African-American, two were white, three were Asian, and two (including Plaintiff) were Hispanic. (*See* Clarke Aff. ¶ 16.) Plaintiff has alleged that none of the Maintenance Mechanics received ELV training. (*See* Pl.'s Hotel Mem., at 7.) Thus, the Hotel's failure to provide an ELV training program equally affected African-American, white, Asian and Hispanic employees.

lished that he was qualified for an ELV technician position. *See Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128–29 (2d Cir.2004) (noting that plaintiff "must show that she met the defendant's criteria for the position," and finding that African–American employee failed to establish that she was qualified for the position of account manager); *accord Bush v. Fordham Univ.*, 452 F.Supp.2d 394, 408 (S.D.N.Y. 2006).[14]

According to the Hotel, "[t]he position of ELV technician requires computer and electrical background and training and a thorough knowledge of computer microchips, programming including microchip design." (*See* Clarke Aff. ¶ 28.) Plaintiff does not dispute these requirements and has not proffered any evidence that the Hotel ever disregarded these requirements in hiring other people as ELV technicians. *See R.H. Donnelley, Corp.*, 368 F.3d at 129 (suggesting that evidence that an employer relaxed qualifications for a position might discredit an employer's argument that a plaintiff was not qualified). Indeed, all

ELV employees hold degrees in either computer science, electrical systems, or mechanical engineering. (*See* Clarke Aff. ¶¶ 25, 28.) Plaintiff, on the other hand, concedes that he has never taken a computer course, worked with computers, or completed his high school diploma. (*See* Silva App.; D1. 25.)[15] Plaintiff, thus, has failed to establish a *prima facie* case of discriminatory failure to promote because he has not provided competent evidence from which a jury could reasonably find that he was qualified to be an ELV technician, no less equally or more qualified than the two individuals who were given ELV positions.

In sum, Plaintiff's promotion and training claims are timebarred and without merit. Accordingly, this Court recommends that these claims be dismissed with prejudice.

### B. *Overtime*

The thrust of Plaintiff's overtime claim is that the Hotel discriminated against him

---

**14.** Plaintiff also has not, as is generally required, "allege[d] that [] he applied for a specific position or positions and was rejected therefrom...." *Brown*, 163 F.3d at 710. This general rule "is subject to modification where the facts of a particular case make an allegation of a specific application a quixotic requirement." *See id.* In *Brown*, the Second Circuit suggested that such a modification would be appropriate where a plaintiff "was not aware of positions, posted or not, as they came open," or the employer "refused to accept applications for positions or hand-picked individuals for promotion to a position without considering applicants." *See id.; see also Mauro v. Southern New England Telecommunications, Inc.*, 208 F.3d 384, 387 (2d Cir. 2000) ("an employee by definition cannot apply for a job that he or she does not know exists").

Plaintiff contends that did not apply for an ELV technician position because the positions were not posted. (D1. 64). He also contends that, prior to 2000, he complained to Clarke that ELV positions were not being posted and

that the Hotel was hiring "out of the [Maintenance] Department." (D1. 66.) The Court finds Plaintiff's claim to be sufficiently analogous to the exceptions articulated in *Brown* to relieve him of having to demonstrate that he applied for an ELV technician position.

**15.** Plaintiff makes much of the fact that Fan was a member of the bell staff prior to his promotion to the ELV department (*see* Pl.'s Hotel Mem., at 6; Chronolog[y] of Hector Silva, The Peninsula Hotel of New York and Local 94, attached to Am. Pet. at 5), yet Plaintiff admitted at his deposition that he knew nothing of Fan's qualifications (*see* D1. 64). In fact, Fan holds a university degree in mechanical engineering, and worked as a mechanical engineer prior to working at the Hotel. (*See* Employment Application for Si Yuan Fan, dated July 1, 1992, attached as Ex. O to Clarke Aff.) That Fan worked as bell man at the Hotel does not render meaningless his educational and professional qualifications.

by assigning Special Project overtime to two Caucasian Maintenance Mechanics with less seniority than Plaintiff. (*See* Complaint, filed Sept. 7, 2005 ("Compl.") ("The Hotel manage[d] to discriminate against me once again by not handing out the overtime by seniority and giving the special project to two cau[c]asion[s]"); *see also* D1. 112–13.) The evidence shows that two white, less-senior employees received more Special Project overtime than Plaintiff, but the Hotel contends that no discrimination occurred because the Hotel has the discretion to assign Special Project overtime on the basis of the skills necessary to the particular project. (*See* Clarke Aff. ¶ 17–18.) The Hotel also argues that Benny Rodriguez, a Hispanic, received substantial Special Project overtime in 2002, 2003 and 2004, and thus there is no evidence that the Hotel unlawfully discriminates against Hispanics in the assignment of the overtime. (*See* Hotel Mem., at 20–21.)

### 1. *Legal Standards*

To assert a *prima facie* claim of disparate treatment under Title VII as to the Hotel's assignment of Special Project overtime, Plaintiff must show: (1) that he belonged to a protected class; (2) that he was qualified to do the Special Project overtime; (3) that he was denied opportunities to do Special Project overtime; and (4) that these denials of opportunities occurred under circumstances giving rise to an inference of discrimination. *Cf. Feingold*, 366 F.3d at 152. If Plaintiff sets forth a *prima facie* case of discrimination, the Hotel must demonstrate that "some legitimate, nondiscriminatory reason" exists for the alleged discriminatory actions. *McDonnell–Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. If the Hotel presents legitimate reasons for its actions, Plaintiff must

then be given an opportunity to demonstrate that the Hotel's stated reasons are merely a pretext for discrimination. *See id.* at 804, 93 S.Ct. at 1825.

### 2. *Application*

It is undisputed that Plaintiff is a member of a protected class and that he was denied opportunities for Special Project overtime. Nevertheless, Plaintiff has presented no evidence indicating that he was qualified to perform most of the available Special Project work, which involved a wide variety of tasks outside of the Maintenance Mechanic job description (*e.g.,* electrical work and carpentry). (*See* Clarke Aff. ¶ 17.)

Moreover, even if Plaintiff was qualified to perform a greater proportion of the Special Project work than he was assigned, there is no evidence from which a reasonable jury could conclude that Plaintiff was not assigned project overtime under circumstances giving rise to an inference of discrimination. Plaintiff's claim rests on the mere fact that Ismet Demirovic and Geno Donato, two white Maintenance Mechanics with less seniority than Plaintiff, received more Special Project overtime than he did. His claim, however, relies on the theory that Plaintiff's seniority entitled him to preferential assignment of Special Project work, and that any assignment of project work to less senior employees was *de facto* discriminatory. Plaintiff provides no legal support for these assumptions and there is no law, nor inviolable workplace principle, that seniority alone trumps all other considerations in every employment decision. If Plaintiff *was* entitled to a greater share of the available Special Project work by virtue of his seniority, that was a right granted him under the CBA, not Title VII.[16] Moreover, Plaintiff fails to

---

**16.** While the matter of whether the CBA re-

quired Special Projects overtime to be allocat-

recognize that Rodriguez, another Hispanic, was assigned the most Special Project overtime in 2002 and 2003, and received substantial Special Project overtime in 2004.[17] This alone undercuts any argument that the Hotel discriminated on the basis of race in allocating Special Project overtime. *Cf. Magnan v. Manhattan Eye, Ear & Throat Hosp.*, No. 01 Civ. 6306(HB), 2002 WL 334505, at *4 (S.D.N.Y. Feb.22, 2002) (that defendant provided other members of plaintiff's protected class with a severance package negates inference of discriminatory conduct that one could infer from defendant's failure to provide plaintiff with severance); *Powell*, 2001 WL 262583, at *11 (no inference of discrimination where a member of plaintiff's protected class received the promotion at issue, especially where the claim is that whites were favored).

Even if Plaintiff could make out a *prima facie* case of discrimination in the assignment of Special Project overtime, the Hotel has articulated a nondiscriminatory reason for denying Plaintiff a greater proportion of the available overtime, namely that he did not possess the necessary skills to complete the work. (*See* Defendant Hotel's Reply Memorandum of Law in Support of Motion for Summary Judgment, dated Dec. 4, 2006, at 5.) ("Based upon [Plaintiff's] admitted limited skill level, plaintiff received less special overtime in 2002, one year prior to his initial EEOC

Charge and any grievance.") Plaintiff does not offer any evidence in rebuttal, nor does he identify any projects that were assigned to others, but that he was equally or more qualified to complete. In sum, Plaintiff fails to provide any evidence that the Hotel's reasons for not assigning Plaintiff greater amounts of Special Project overtime were mere pretext for discrimination.

Because Plaintiff has failed to demonstrate a *prima facie* case of discrimination and has failed to offer any competent evidence indicating or even suggesting that he was denied project overtime because of his race, no reasonable jury could conclude that Plaintiff was discriminated against on the basis of his race in the assignment of Special Project overtime. Accordingly, this Court recommends that Plaintiff's claim of discrimination in the allocation of Special Project overtime be dismissed.

## C. Retaliation

Plaintiff claims he was disciplined and terminated without cause in retaliation for filing EEOC charges in 2003 and 2004. The Hotel contends that all of Plaintiff's allegations of retaliation were addressed in arbitration and decided in the Hotel's favor, and in any event, are without merit. (*See* Hotel Mem., at 21.)

### 1. Legal Standards

Title VII forbids discrimination against an employee "because he has opposed any

---

ed by seniority need not be addressed here, the Court notes that Plaintiff raised this claim in arbitration and lost. (*See* Feb. 2005 Rpt., at 7.)

17. During 2002, Rodriguez earned the greatest amount Special Project overtime, with 249 hours. Donato earned 2 of 248 Special Project hours, and Demirovic worked 214 Special Project hours. Plaintiff earned 23.5 Special Project hours.

During 2003, Rodriguez again earned the most Special Project overtime, with 233.5

hours. Plaintiff had no Special Project overtime. Demirovic earned 151.5 Special Project hours, and Donato earned 142 Special Project hours.

During 2004, Rodriguez earned 173 Special Project hours, virtually the same amount as Demirovic, who earned 180 Special Project hours. Plaintiff earned 18 Special Project hours, and Donato earned 149 Special Project hours. (*See* Clarke Aff. ¶ 18; Overtime Records for Engineering Department, attached as Ex. K to Clarke Aff.)

practice made an unlawful employment practice ... or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under the auspices of that statute. 42 U.S.C. § 2000e–3(a). To survive summary judgment, a plaintiff claiming retaliation under Title VII must produce sufficient evidence to permit a rational trier of fact to find "(1) that the plaintiff engaged in protected activity under Title VII, (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action, *i.e.*, that a retaliatory motive played a part in the adverse employment action." *Kessler v. Westchester County Dep't of Social Servs.*, 461 F.3d 199, 205–06 (2d Cir.2006) (citing *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 216 (2d Cir.2001)). Once a plaintiff has made out a *prima facie* case of retaliation, the burden shifts to the employer to articulate a legitimate nonretaliatory reason for its actions, whereupon the plaintiff "must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation." *Cifra*, 252 F.3d at 216. In the end, "[t]he ultimate burden of persuasion, of course, remains with the plaintiff.... The critical question is whether a plaintiff has proven by a preponderance of the evidence that the defendant intentionally ... retaliated against the plaintiff for engaging in protected activity." *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir.1990).

### 2. *Merits*

Plaintiff has established the first three elements of a *prima facie* case of retalia-

tion: (1) he filed charges with the EEOC in 2003 and 2004;[18] (2) this protected activity was known to the Hotel; and (3) he subsequently was suspended four times and ultimately terminated from employment. The viability of Plaintiff's claim hinges on whether Plaintiff has demonstrated a causal nexus between his complaints to the EEOC and the Hotel's adverse employment actions.

Plaintiff was suspended from work and ultimately terminated after he filed charges with the EEOC. Temporal proximity can demonstrate a causal nexus, *see Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir.), *cert. denied* 534 U.S. 951, 122 S.Ct. 348, 151 L.Ed.2d 263 (2001)(citing *Manoharan v. Columbia Univ.*, 842 F.2d 590, 593 (2d Cir.1988)), but the proximity must be close, *see Cifra*, 252 F.3d at 217 (citing *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir.1996)). In this case, Plaintiff's first suspension occurred nine months after he filed the 2003 charge; the second suspension occurred two months after the 2004 charge; the third suspension occurred six months after the 2004 charge; the fourth suspension occurred nine months after the 2004 charge; and his termination from employment occurred ten months after the 2004 charge. Other than the second suspension, which occurred two months after the filing of the 2004 EEOC complaint, any causal connection based upon the temporal proximity of Plaintiff's EEOC activity and the adverse job actions is tenuous at best. *See Clark County School Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 1510–11, 149 L.Ed.2d 509 (2001) (citing cases which held that three and four-month periods between the protected activity and the ad-

---

**18.** As noted *supra* at note 8, Plaintiff's 2003 charge alleged discrimination against a class not protected under Title VII; thus, it is questionable whether making the charge was protected activity.

verse action were insufficient to establish a causal connection when temporal proximity is the only evidence of causality). Moreover, the adverse job actions taken against Plaintiff must be viewed within the context of an extensive period of progressive discipline, going back to 1989, during which Plaintiff had been repeatedly warned about misconduct and poor work performance. "Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery*, 248 F.3d at 95; *accord Phillips v. Mt. Sinai Med. Ctr.*, No. 01 Civ. 5656(GBD), 2006 WL 177155, at *2 (S.D.N.Y. Jan.24, 2006). Accordingly, the Court concludes that Plaintiff has failed to adduce evidence upon which a reasonable juror could conclude that his EEOC activity played some role in the Hotel's adverse job actions against him.

Even if Plaintiff satisfied the requirements of a *prima facie* retaliation claim, the Hotel has proffered legitimate reasons for suspending Plaintiff and terminating his employment. Plaintiff's long history of poor work performance and insubordinate behavior provide ample justification for his suspension and eventual termination from employment. *See Schnabel v. Abramson*, 232 F.3d 83, 88 (2d Cir.2000) (plaintiff's difficulty following instruction, "outright insubordination," and "inept[ ]" performance, were "clear and specific" reasons for his firing); *Aksamit v. 772 Park Ave. Corp.*, No. 00 Civ. 5520(RCC), 2003 WL 22283813, at *4 (S.D.N.Y. Oct.2, 2003) (that plaintiff took excessive time off, read newspapers during work hours and failed to perform work duties were legitimate, nondiscriminatory reasons for terminating

plaintiff's employment); *Baez v. Yeshiva Univ.*, No. 99 Civ. 11644(HB), 2000 WL 1897792, at *5 (S.D.N.Y. Dec.29, 2000) (plaintiff's refusal to complete a routine task, after being warned and disciplined for similar behavior, was insubordination and a legitimate reason for terminating employment); *Thermidor v. Beth Israel Med. Ctr.*, 683 F.Supp. 403, 412 (S.D.N.Y. 1988) (noting that low productivity constitutes a legitimate nondiscriminatory reason justifying discharge).

Plaintiff proffers no evidence that would permit a reasonable factfinder to conclude that the Hotel's reasons for disciplining and discharging Plaintiff from employment were mere pretext for unlawful retaliation for filing EEOC complaints. In many instances, Plaintiff does not dispute that he committed various infractions (D1. 130–91), but argues, without any competent evidence to support his contention, that he had been unfairly singled out for behavior that others freely engaged in (D1. 156–57 (other employees made unauthorized visits to guest rooms to socialize with co-workers); D1. 154 (no other employees disciplined for sleeping on the job, or reading newspapers during the workday); D1. 165–66 (other employees signed in and out at times other than start and end of their shifts)).

Plaintiff also disagrees with the Hotel's contention that he was an insubordinate, underperforming employee. However, "[w]hat constitutes satisfactory job performance is measured by the employer's criteria, not by some hypothetical objective criteria," or by the employee. *Ponniah Das v. Our Lady of Mercy Medical Ctr.*, No. 00 Civ. 2574(JSM), 2002 WL 826877, at *9 (S.D.N.Y. Apr.30, 2002).[19] Plaintiff

---

19. The Court is permitted to rely on Plaintiff's employment records "although Title VII and other employment discrimination cases are

rife with allegations that employers and supervisors have evaluated the employee unfairly and/or created a false record to show the

has not demonstrated "that the employer's expectations were objectively unreasonable and made in bad faith," *see id.* (citing *Meiri,* 759 F.2d at 995), nor has he produced "any statements or other evidence from other employees to support his assertions of discrimination," *see id.* In sum, Plaintiff's subjective belief that he was not treated fairly is simply not enough to demonstrate pretext. *Cf. Foxworth v. Am. Bible Soc.,* No. 03 Civ. 3005(MBM), 2005 WL 1837504, at *9 (S.D.N.Y. July 28, 2005) (plaintiff's "own conclusory assertions, subjective beliefs, and circular reasoning" does not establish that employer's actions were based upon her race or sex); *Mathurin v. Skrivaneck,* No. 00 Civ. 1762(RMB)(MHD), 2003 WL 23744279, at *13 (S.D.N.Y. June 10, 2003) ("[R]egardless of whether plaintiff agrees or disagrees with defendant's assessment of her, and regardless of whether that assessment was justified, the defendant's belief in her inadequacy precludes liability, on the current record, on a claim of impermissible retaliation."); *Taylor v. Polygram Records,* No. 94 Civ. 7689(CSH), 1999 WL 124456, at *16 (S.D.N.Y. Mar.8, 1999) ("[Plaintiff's] attempt to rebut Defendants' proffered explanation by parsing the details of selected incidents, generally disputing her supervisors' assessments, and providing her own contrary appraisal of her work, is unavailing [Plaintiff's] fundamental disagreement with the conclusions her supervisors drew from incidents which she admits occurred, and her subjective belief that they should not have reflected badly on her performance because they were someone else's fault, is not evidence that her supervisors' appraisals were a sham, invented to mask discrimination").

Moreover, where an employee has been warned that his job performance is unsatisfactory and he continues the same conduct, he cannot shield himself from legitimate managerial prerogatives by filing a discrimination complaint and then alleging unlawful retaliation. *See Spadola v. N.Y. City Transit Auth.,* 242 F.Supp.2d 284, 292 (S.D.N.Y.2003) (Title VII not intended "to arm employees with a tactical coercive weapon that may be turned against the employer as a means for the asserted victims to advance their own retaliatory motives and strategies, . . . , or even to escape appropriate disciplinary measures"); *see also Ford v. Consolidated Edison Co. of New York, Inc.,* No. 03 Civ. 9587(PAC), 2006 WL 538116, at *12 (S.D.N.Y. Mar.3, 2006) ("Although Plaintiff makes conclusory allegations of pretext, those allegations are completely undermined by the largely undisputed evidence that Plaintiff [failed to perform his job and was insubordinate].").

This Court thus recommends that the Hotel be granted summary judgment on Plaintiff's retaliation claim.

### III. *Plaintiff's Claims Against the Union*

#### A. *Title VII*

On December 16, 2005, Plaintiff amended his Complaint to add Local 94 as a Defendant in his Title VII action against the Hotel. (*See* Am. Compl.) Local 94 has moved for summary judgment on this claim on the grounds that: (1) any Title VII claim against the Union is time-barred; (2) Plaintiff has testified that he did not intend to assert a Title VII claim against the Union; and (3) any Title VII claim against the Union is without merit. (*See* Memorandum of Law in Support of Defendant International Union of Operat-

employee in the worst light possible and thereby justify their actions." *See Ponniah*

*Das,* 2002 WL 826877, at *9.

ing Engineers Local 94–94A–94B's Motion for Summary Judgment, dated Sept. 15, 2006 ("Union Mem."), at 12–18.)

At his deposition, Plaintiff stated that he was not charging the Union with unlawful discrimination under Title VII, testifying as follows:

QUESTION: Can you explain how the Union discriminated against you on the basis of your race with respect to any unequal terms and conditions of employment.

PLAINTIFF: Well, I'll explain this whole thing if you'd like?

QUESTION: No, no. I'm asking about this—we'll get to the other aspects.

PLAINTIFF: Okay. This [discrimination claim] was not specifically for the Union. The ones that I brought to court was the Hotel. The Union was dragged into it because of nonrepresentation. So this doesn't—necessarily is saying that I'm charging discrimination against the Union. [sic]

QUESTION: Let me ask you, are you charging discrimination on the basis of your race against the Union in this lawsuit?

PLAINTIFF: No.

QUESTION: What are you claiming in this lawsuit?

PLAINTIFF: Nonrepresentation. [sic]

(D2. 48–49.)

In effect, Plaintiff's deposition testimony constitutes a voluntary discontinuance of any Title VII discrimination claims against the Union. In any event, any such claim is time-barred.

As discussed, under Title VII, a civil action must be filed "against the respondent named in [an EEOC] charge" within ninety days after receiving a right-to-sue letter from the EEOC. *See* 42 U.S.C. § 2000e–5(f)(1). This is a "[p]rocedural requirement [ ] established by Congress

for gaining access to the federal courts." *Baldwin Cty. Welcome Ctr. v. Brown,* 466 U.S. 147, 152, 104 S.Ct. 1723, 1726, 80 L.Ed.2d 196 (1984). In the instant case, Plaintiff filed a charge of discrimination against Local 94 on February 10, 2004; his right-to-sue letter on that charge was mailed on August 26, 2005. (*See* Feb. 2004 EEOC Charge; Dismissal and Notice of Rights, dated Aug. 26, 2005, attached to Am. Compl.) It is presumed that a mailed document is received three days after the date on which it is sent. *See* Fed.R.Civ.P. 6(e); *Sherlock v. Montefiore Med. Ctr.,* 84 F.3d 522, 525 (2d Cir.1996); *Ridgway v. Metropolitan Museum of Art,* No. 06 Civ. 5055(SAS), 2007 WL 1098737, at *3 (S.D.N.Y. Apr.10, 2007). Thus, Plaintiff was required to commence any civil action against the Union by November 30, 2005.

Plaintiff commenced the action against the Hotel on September 7, 2005, but did not amend his Complaint to add Local 94 as a defendant until December 16, 2005. (*See* Am. Compl.) Thus, any claim under Title VII against the Union is untimely, unless Plaintiff can demonstrate that the claim against the Union "relates back" to the original Complaint. *See* Fed.R.Civ.P. 15(c); *VKK Corp. v. Nat'l Football League,* 244 F.3d 114, 128 (2d Cir.2001) ("If a complaint is amended to include an additional defendant after the statute of limitations has run, the amended complaint is not time barred if it 'relates back' to a timely filed complaint."). Plaintiff, however, fails to meet the requirements for permitting the claims against the Union to relate back to the original Complaint.

"There are . . . three requirements that must be met before an amended complaint that names a new party can be deemed to relate back to the original timely complaint. First, both complaints must arise out of the same conduct, transaction, or occurrence. Second, the additional defen-

dant must have been omitted from the original complaint by mistake. Third, the additional defendant must not be prejudiced by the delay." *VKK Corp.*, 244 F.3d at 128. It is questionable whether the claims against the Union arise out of the same conduct or occurrence as those against the Hotel. As Plaintiff's employer, the Hotel is alleged to have discriminated against him in the terms and conditions of his employment. The Union made no employment decisions with respect to Plaintiff. Rather, the Union is alleged to have inadequately represented Plaintiff's interests in disciplinary and arbitration proceedings, and to have failed to adequately address Plaintiff's concerns about the ELV Department.

Moreover, Local 94 was not omitted from the original Complaint because of a "mistake concerning the identity of the proper party." *See* Fed.R.Civ.P. 15(c)(3)(B); *William H. McGee & Co. v. M/V Ming Plenty*, 164 F.R.D. 601, 606 (S.D.N.Y.1995) ("[t]he misidentification of similarly named or related companies is the classic case for application of Rule 15(c) relation back."); *cf. Polite v. Town of Clarkstown*, 198 F.R.D. 610, 612 (S.D.N.Y.2001) ("A plaintiff is not considered to have made … a 'mistake' … if the plaintiff knew that he was required to name an individual as a defendant but did not do so because he did not know the individual's identity."); *Hickey v. City of New York*, No. 01 Civ. 6506(GEL)(FM), 2004 WL 736896, at *4 (S.D.N.Y. Apr. 5, 2004) (same). Plaintiff has not explained why he did not name the Union as a Defendant in his original Complaint, but since he filed an EEOC charge against the Union more than a year prior to filing his original Complaint, the reason cannot be that he was mistaken as to the Union's identity.[20]

Because the claims against the Union in the Amended Complaint do not relate back to Plaintiff's original Complaint, they are time-barred.

### B. *Breach of the Duty of Fair Representation*

While the Amended Complaint does not expressly assert a claim against the Union for breach of the duty of fair representation, it does mention several instances where the Union allegedly did not take appropriate action on Plaintiff's behalf. (*See* Am. Compl.) At his deposition, Plaintiff testified that the Union had breached its duty of fair representation by: (1) failing to pursue his complaints about the ELV department; (2) allowing him to be "illegally removed as a [Union] delegate;" (3) not properly representing him when he was disciplined by the Hotel; and (4) not adequately representing him at the arbitration where he challenged the termination of his employment. (*See* D2. 77–90.)[21] In light of Plaintiff's deposition testimony, in which he stated that he was asserting a claim of "non-representation," although Plaintiff has not sued the Hotel for breach of the CBA, the Court will construe the Amended Complaint as asserting a hybrid claim under Section 301 of the Labor Management Relations Act, 1947, 61 Stat. 156, 29 U.S.C. § 185(a), and of the failure of the duty of fair representation. *See Sash v. Dudley*, No. 05 Civ.

---

**20.** Because the Court concludes that Plaintiff did not omit the Union as a Defendant because of mistake, it is unnecessary to determine whether the Union would be prejudiced by the delay.

**21.** The Court understands Plaintiff to be claiming that the Hotel breached the CBA by not filling ELV positions with Maintenance Mechanics, "allowing" Plaintiff to be replaced as a Union Delegate, and unfairly disciplining Plaintiff and terminating his employment.

7498(SAS), 2006 WL 997256, at *1 n. 18 (S.D.N.Y. Apr.17, 2006) (when plaintiff is proceeding *pro se*, "the Court will apply a lenient standard in construing his claims") (citing *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972)); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994) (court will "read [the *pro se* party's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest").

### 1. *Legal Standards*

Section 301 of the Labor Management Relations Act controls controversies involving assertions of rights under an agreement between an employer and a labor organization. *See Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509, 121 S.Ct. 1724, 1728, 149 L.Ed.2d 740 (2001). "In order to provide individual employees with recourse when a union breaches its duty of fair representation in a grievance or arbitration proceeding, the Supreme Court has held that an employee may bring suit against both the union and the employer." *Carrion v. Enterprise Ass'n, Metal Trades Branch Local Union 638*, 227 F.3d 29, 33 (2d Cir.2000) (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164, 103 S.Ct. 2281, 2289–91, 76 L.Ed.2d 476 (1983)). "To establish a hybrid § 301/[duty of fair representation] claim, a plaintiff must prove both (1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation vis-a-vis the union members." *White v. White Rose Food*, 237 F.3d 174, 178–79 (2d Cir.2001) (citing *DelCostello*, 462 U.S. at 164–65, 103 S.Ct. at 2291). A plaintiff is not required to sue both the employer and the union, "but the case he must prove is the same whether he sues one, the other or both." *DelCostello*, 462 U.S. at 165, 103 S.Ct. at 2291. "[T]he two claims are inextricably interdependent. To prevail

against either the company or the Union, . . . [employee-plaintiffs] must not only show that their discharge [or other discipline] was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union." *Id.* at 164–65, 103 S.Ct. at 2291. Such hybrid claims are subject to a six-month statute of limitations, *see id.* at 172, 103 S.Ct. at 2294, which begins to run when the plaintiff knew or should have known that a union breached its duty, *see Kavowras v. New York Times Co.*, 328 F.3d 50, 55 (2d Cir.2003); *Demchik v. General Motors Corp.*, 821 F.2d 102, 105 (2d Cir.1987) ("When the cause of action is based on a breach of the union's duty of fair representation, the claims against both the employer and the union begin to accrue 'no later than the time when plaintiffs knew or reasonably should have known that such a breach had occurred.' ").

To establish a breach of the duty of fair representation, a plaintiff first must demonstrate that "a union's conduct toward a member of the collective bargaining unit [was] arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967); *accord Kavowras*, 328 F.3d at 54. "A union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational. To be discriminatory, a union's actions must be invidious or unlawful. Finally, to constitute bad faith, there must be fraud, deceitful action or dishonest conduct." *Nicholls v. Brookdale Univ. Hosp. and Med. Ctr.*, No. 05 Civ. 2666(JBW), 2005 WL 1661093, at *6 (E.D.N.Y. July 14, 2005)(internal citations and quotation marks omitted). In addition, the union's actions "must have seriously undermine[d] the arbitral process." *Mack v. Otis Elevator Co.*, 326 F.3d 116,

129 (2d Cir.), *cert. denied* 540 U.S. 1016, 124 S.Ct. 562, 157 L.Ed.2d 428 (2003); *accord Barr v. United Parcel Serv.*, 868 F.2d 36, 43 (2d Cir.1989). While "a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion," union members do not have an "absolute right to have [their] grievances taken to arbitration." *Spellacy v. Airline Pilots Assoc.-Int'l*, 156 F.3d 120 (2d Cir.1998) (quoting *Vaca*, 386 U.S. at 191, 87 S.Ct. 903).

### 2. *Application*

#### a. *The ELV Complaints*

Plaintiff testified that he had been pushing since 1999 for the Union to file a grievance about the Hotel's ELV hiring practices, and as early as that year had known that the Union was not acting on his concerns. (D2. 49–50.) [22] Plaintiff also testified that as of October 7, 2004, the final day of a two-day hearing on his April 30, 2004 three-day suspension ("First Arbitration Hearing"), he had concluded that "nothing was going to be done" about his ELV complaints. (D2. 79.) Plaintiff testified that the only time the ELV situation had been "mentioned," was at the First Arbitration Hearing. (D2. 78–79.)

In light of Plaintiff's testimony, the Union asserts that Plaintiff's claim accrued on October 7, 2004, and is thus time-barred since Plaintiff did not file a civil action against the Union until December 2005, fourteen months after the claim accrued. (*See* Union Mem., at 21.) Plaintiff has not argued that his claim accrued later than that date; thus, this Court concludes that the claim is time-barred. *See Buttry v. General Signal Corp.*, 68 F.3d 1488, 1492 (2d Cir.1995) (finding that hybrid claim

cause of action accrued at a meeting where plaintiffs conceded that they left that meeting knowing that the union would not press their rights).

#### b. *"Removal" as Union Delegate*

At the First Arbitration Hearing, the Union alleged, on behalf of Plaintiff, that the Hotel had tampered with a 2002 Union election in which Plaintiff lost re-election as a Delegate. On February 24, 2005, Impartial Chairman Ross determined that the claim was without merit. (*See* Feb. 2005 Rpt., at 4.) Plaintiff appears to contend that the Union breached its duty with regard to this arbitration, but he does not specify how the alleged breach occurred.

Any claim of breach of the duty of fair representation based upon the 2002 election is time-barred. In circumstances where a plaintiff seeks to challenge the adequacy of union representation at an arbitration hearing, the claim accrues when the arbitrator has issued an award. *See Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 163 (2d Cir.1989); *accord Ljutovic v. 530 East 86th Street, Inc.*, No. 05 Civ. 9846(GEL), 2006 WL 2524077, at *6 (S.D.N.Y. Aug.31, 2006) (plaintiff not required to file suit against union prior to finding out the outcome of the arbitration). Plaintiff received notice of the arbitrator's decision on February 24, 2005; thus, any claim asserted in the December 2005 Amended Complaint relating to that decision is untimely, as it was filed beyond the six-month limitations period.

#### c. *Representation at Disciplinary Meetings*

Plaintiff testified at his deposition that "every time [the Hotel] wrote me up I

---

**22.** Moreover, Plaintiff had been told by Gadaleta that the Union did not believe that the 1999 Agreement with the Hotel required it to train Maintenance Mechanics for ELV Mechanic jobs, or to provide Maintenance Mechanics with priority over other employees to fill ELV Mechanic job openings. (*See* Gadaleta Decl. ¶ 17.)

wasn't properly [rep]resented." (D2. 82–83.) Plaintiff further explained that his Business Agent should have represented him at any meetings with the Hotel where Plaintiff was to be written-up or otherwise disciplined. (D2. 83–84.)

The Court finds that a claim that the Union breached its duty of fair representation by not adequately representing Plaintiff in meetings with Hotel management is time-barred. The most recent incident this claim could pertain to occurred on December 10, 2004, when Plaintiff was requested to attend a meeting with Hotel management to discuss his failure to complete two work assignments on December 9, 2004. Plaintiff refused to attend the meeting. (*See* Clarke Aff. ¶ 43.) Thus, any such claim asserted in the December 2005 Amended Complaint, based upon the Union's failure to adequately represent Plaintiff on, or prior to, December 10, 2004, is untimely.

### d. *Termination of Employment*

Plaintiff's employment with the Hotel was terminated on or about December 13, 2004. (*See* Clarke Aff. ¶ 43.) Plaintiff grieved his termination on the grounds of unlawful discrimination and retaliation. (*See id.* ¶ 44.) An arbitration hearing was held on May 25, 2005, and, on July 14, 2005, Impartial Chairman Ross found that the termination of employment was for cause, and denied the grievance. (*See* July 2005 Rpt., at 3.)

As an initial matter, Plaintiff's claim that the Union breached its duty of fair representation at the May 25, 2005 hearing is timely, as the arbitrator's decision was rendered within six months of Plaintiff filing his Amended Complaint. *See Ghartey,* 869 F.2d at 163; *Ljutovic,* 2006 WL 2524077, at *6. The remaining issue is whether Plaintiff has stated a cognizable claim that the Union failed to fairly represent him at the arbitration hearing on the termination of his employment.

Plaintiff appears to contend that, at the May 25 hearing, the Union failed: (1) to raise Plaintiff's claim that he was terminated from employment for exercising his "*Weingarten* Rights;" [23] (2) to call one of two witnesses Plaintiff wished to testify; (3) to adequately challenge documentary evidence proffered by the Hotel that Plaintiff believes was "unjustified;" and (4) to address Plaintiff's request "for retro active pay, severance, holiday pay and reinstatement." (*See* Letter of Hector Silva to Dan Castillo, Esq., dated June 6, 2005, attached to Am. Compl.; D2. 65–69.)

In order to state a cognizable claim for the breach of the duty of fair representation based upon the Union's representation at the May 25, 2005 hearing, there first must be some evidence that the Union's conduct toward Plaintiff was "arbitrary, discriminatory, or in bad faith." *Vaca,* 386 U.S. at 190, 87 S.Ct. at 916. Plaintiff has provided no such evidence.

First, the Impartial Chairman's report indicates that the issue of Plaintiff's *Weingarten* rights was raised at the arbitration. Plaintiff apparently argued, as he did at his deposition, that he was entitled to have his Business Agent, rather than a Union Delegate, present when he was called to a

---

**23.** "In *NLRB v. Weingarten,* 420 U.S. 251, 260, 95 S.Ct. 959, 965, 43 L.Ed.2d 171 (1975), the Supreme Court upheld an administrative determination that an employer's denial of an employee's request to have a union representative present during an investigatory interview with the employer which the employee reasonably believes could lead to disciplinary action is an unfair labor practice." *Accord Sanchez v. Dankert,* No. 00 Civ. 1143(GBD)(FM), 2002 WL 529503, at *9 (S.D.N.Y. Feb. 22, 2002).

disciplinary meeting with the Hotel.[24] The arbitrator held that Plaintiff's contention was without merit. (*See* Feb. 2005 Rpt., at 3.) The bare fact that Plaintiff did not prevail in making this argument does not create grounds for a claim of the breach of the duty of fair representation.

Second, Plaintiff has offered nothing but vague, conclusory statements about what evidence could have been adduced from Barr, the witness Plaintiff wished to have testify at the May 25 hearing, who was not called. (*See* D2. 67) ("[Barr] would have had a lot more to say because he witnessed a lot of what was going on and what I was going through at the time of all these suspensions.")[25] Plaintiff has not provided an affidavit or deposition testimony from Barr that could establish the existence of a genuine issue of fact as to the value of Barr's testimony. *See Rosado v. Potter*, 3:04 Civ. 00758(PCD), 2007 WL 30864, at *9 (D.Conn. Jan. 4, 2007) ("Plaintiff has offered nothing but conclusory claims as to what these witnesses might have offered into testimony.") Moreover, even if failing to present Barr's testimony was error, Plaintiff still has not demonstrated that the Union acted in bad faith or arbitrarily. *See Barr*, 868 F.2d at 43 (tactical error in failing to present witnesses is insufficient to demonstrate bad faith or arbitrariness); *Tomney v. Int'l Ctr. for the Disabled*, 357 F.Supp.2d 721, 736 (S.D.N.Y.2005) (same). Similarly, Plaintiff's claim that the Union did not raise certain issues about back pay and severance pay, does not alone demonstrate bad faith or arbitrariness, as opposed to negligence. *See United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 372–73, 110 S.Ct. 1904, 1911, 109 L.Ed.2d 362 (1990) (finding that mere negligence does not state a claim of unfair representation); *accord Tucker v. Am. Bldg. Maint.*, 451 F.Supp.2d 591, 596 (S.D.N.Y.2006).

Lastly, Plaintiff's complaint about the "unfounded" nature of the Hotel's evidence appears to be little more than disappointment that the arbitrator gave more weight to the Hotel's arguments than Plaintiff's. Plaintiff does not specify what the contested or unfounded evidence was, or what the Union could have done with respect to the evidence. Again, the mere fact that Plaintiff did not prevail at his arbitration does not create grounds for a claim of failure of the duty of fair representation.

In sum, the Union exercised its judgment at the May 25 hearing in calling witnesses and making certain legal arguments. Plaintiff has proffered not one scintilla of evidence indicating that the Union's actions were motivated by discrimination, or by bad faith, or were so unreasonable as to be irrational. Nor has Plaintiff demonstrated that the Union's actions, or inactions, undermined the arbitral process. Indeed, Plaintiff testified at the hearing, and was thus able to argue the points he wished, as did one of the witnesses he offered. The arbitrator's report indicates that virtually all of the concerns Plaintiff raises now were considered in making his decision. Accordingly, this Court recom-

---

**24.** At his deposition, Plaintiff contended that if a Union Delegate is being written up by management, a Business Agent required to be present. (D2. 82–84.) However, at the deposition and at the May 25 hearing, Plaintiff could not identify the source of such a requirement. (D2. 84–85; Feb. 2005 Rpt., at 3.) Moreover, even if Plaintiff is correct, Plaintiff was no longer a Union Delegate when he was sus-pended and his employment was terminated, so, even accepting his premise, he had no right to have a Business Agent present at those disciplinary proceedings. (D2. 86–87.)

**25.** According to Plaintiff, Barr had testified on his behalf in his two prior arbitrations. (D2. 71.)

mends that the Union be granted summary judgment with respect to Plaintiff's claim for breach of the duty of fair representation.

## CONCLUSION

For the reasons set forth above, this Court respectfully recommends that Defendants' motions for summary judgment be granted and that Plaintiff's claims be dismissed with prejudice.

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed.R.Civ.P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Richard J. Holwell, United States District Judge, and to the chambers of the undersigned, Room 1660. Any requests for an extension of time for filing objections must be directed to Judge Holwell. Failure to file objections will result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn,* 474 U.S. 140, 145, 106 S.Ct. 466, 470, 88 L.Ed.2d 435 (1985); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Small v. Sec'y of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989).

May 18, 2007.